Campbell j.
Thought there ought to be no consolidation, but that the suits should remain on the docket as they are.
Overton j.
The practice ought to be settled. Where a court clearly perceive that no injury will arise from a consolidation, they may order it on such terms as they may deem correct. Usually the application comes from the defendant. It is otherwise in this case. The defendants have severed in their pleading, and for this there might have been what the defendants, conceived to be, the strongest reason. They may have long chains of title, in no wise dependent on, nor connected with each other. In such cases defendants might well suppose, that the joining in pleading would produce embarrassment, and injure the defence each might wish to make. In cases where the plaintiff brings several actions, depending on one principle, as in a common case of tresspass, where the plaintiff declares separately ; on the application of the defendants supported by affidavit, that the cause of action is joint, the court may order a consolidation. The defendants may have the strongest, reason to induce a severance, and therefore the court ought not to order a consolidation.
Humphreys j.
In this case the defendants have *397 severed in pleading. All our proceedings in a court of law, are made up in court, and under its direction and control. The plaintiff by joining issue, has evidenced consent to this severance. It is now too late to make this application at any rate. The cause is now called for trial, and the parties must abide by the pleadings as they stand.
The plaintiff claimed under a military grant for 3840 acres of land, dated December the 31st, 1793, on the waters of Harpeth. The defendant claimed under a military grant to William Mabane, heir of Robert Mabane a deceased Col. for 7200 acres, on both sides of the west fork of Harpeth river, adjoining Absalom Tatums Worth and South boundary, beginning about one mile north of his south east corner, running east and south. This grant issued under an entry dated August the 16th, 1784. An entry had been made for part of the same land on the 7th of February, 1784. The defendant further offered in evidence a deed from Lewis Robards, without shewing any title to Robards. This was objected to on the ground, that there ought to be shewn a regular deduction of title. In answer by the defendants counsel, it was observed that a person in ejectment was not bound to shew his title in connection. It was sufficient, if at the conclusion of his evidence, a regular title be made out.
Overton, j. There surely can be but one right beginning in giving evidence. In trials of ejectment, it is highly important, to a clear comprehension of claims, that the parties should deraign their titles in regular order, from their foundation, or grant. This is the natural order of things, and ought to be observed. Where a claim depends, on several title papers, from one person to another, it ought to be shewn in the order in which titles were made. Under a different view of the subject, the time, and even the gravity of a court of justice may be sported with. One of the parties shews to the court a deed, which has no connection with the title of the other party. Beginning for instance in the middle of a chain of title, then running from one title to another. The court to be sure, can put this apparently discor *398 dant matter together, after much time has been exhausted but the parties may not be able to connect the claim for the want of some title paper; and so the whole business falls to the ground, after an examination for a day or two. Much public time is lost, and no useful purpose answered. A party might know he could not make out a title, and yet take up the time of the court in this way, if he be permitted. Various inducements might produce such a course. To ascertain the opinion of the court on some particular points; or stave off some other cause on the Docket. We know that it has frequently been the case, that causes after lengthy examination have miscarried in this way, for want of some title paper. The introduction of evidence upwards, in a regular connection, would be attended with some of these inconveniences, though not so many; this however would be inverting the natural order of things.
Campbell, j. and Humphreys, j. The evidence of title papers ought to be introduced, in connection, but they conceived, it was not material whether upwards, or downards, or to, or from the grant.
A copy of a letter of attorney from Mabane, to Anthony Bledsoe, authorising him to make a deed for 1028 acres, part of his tract, was offered in evidence. It was certified by Andrew Ewing C. D. The certificate shewed that James Robertson,in 1788 proved it on oath. The copy does not shew the signature,or seal of Mabane. The counsel for the plaintiff objected to the reading of this copy. It was answered, on the other side that copies of letters of Attorney, might be read, and relied on Ird. 145. with the act of April, 1796,c. 7. s. 1. The note in Iredel, shews that it was always allowable in North-Carolina, to register letters of attorney. The act speaks of grants, deeds, and mesne conveyances. The word deeds certainly includes letters of attorney and the act 1796,allows a fee to the clerk for registering a power of attorney.
Campbell, j. The copy ought to be received.
Dickinson for plaintiff,
relied on Peake’s Ev. 96, to shew that a duces tecum, should have issued for the purpose of getting the original.
Haywood, e contra.
The case in Peake, refers to cases where a paper is in the hands of a third disinterested person. Here the power was made to Bledsoe, who is dead, and if alive, and summoned here, he could not be a witness, being interested.
Humphreys, j. and Overton, j. Since the act of 1796. it would seem proper to admit copies, in the absence of originals. This letter of attorney was proved and registered, previous to that act, when, as we believe, there was no law to authorise it. Beside, it does not appear from this copy that Mabane sealed the instrument. It was then moved, on the part of the defendant, that James Robertson might be sworn to prove the execution.
Humphreys j. There is nothing before the court, we shall see what ground is laid by proof.
Campbell, j. and Overton, j. tacite.
General James Robertson was first sworn on his voire dire, and stated that he was not interested in the event of the cause. He was asked how he was situated respecting these transactions, so as to be able to judge whether he was interested or not.
The counsel for the defendant objected to this question, relying on a decision at Carthage.
Per Curiam. The case alluded to at Carthage, is not similar to the one before the court. In that case the witness himself objected to his answering questions, by which he would injure himself; here the witness does not pretend to protect himself from answering a question, on the ground, that his answer would affect his interest. He may therefore be examined as to his situation.
The witness stated, that he only sold his right as locator, and there exists no obligation to make this right good.
*400 Per Curiam. He is admissible. Upon which he was sworn, and proved that he was a subscribing witness (with Nichols and Lytle) to the letter of attorney, and that the one offered in court was a true copy, as he believed.
Campbell, j. and Humphreys j. thought the, testimony sufficient to authorize the reading of the copy.
Overton j. It does not yet appear, that this instrument had a seal. The witness does not perfectly recollect on this ground, and if he did, it seems to me that resort must be had to a court of equity, to supply such a material defect. If the law had authorized the registration, it might perhaps be sufficient, tho’ this is doubtful. In this case no validity is derived from the circumstance of putting it on the record, and it seems to me, that its loss can no more be supplied in a court of law, in the trial of an ejectment, than if a recent deed had been lost.
The defendant’s grant being, the oldest, the plaintiff read his entry to over reach it. It was dated December the 20th, 1783,No. of location 160,in these words, “captain Jesse Reid, transferred to Guilford Dudley Reid, enters 3840 acres of land, lying on Little Harpeth, beginning above Absalom Tatum’s line, and up said river on both sides,”
Upon examination. it appeared,that Absalom Tatum’s entry was made February the 6th, 1784, for 5000 acres, "on the south side of Big Harpeth, on a fork called Daniel's fork.” From the act of 1782, c. 3. s. 8, it appeared, that commissioners were appointed, of whom Tatum was one. In 1783, c. 3. s. 9, entries of the commissioners pre-emptions and guards, were directed to be made in Davidson county. Isaac Shelby’s and other depositions were offered, to prove, that, the place where Absalom Tatum, one of the commissioners, had elected ; to lay his claim, was a place of notoriety, previous to Reid’s making his entry.
Campbell, j. and Humphreys, j, were of opinion that this was proper evidence. Though *401 Tatum's entry was not made, there was a law in existence allowing him 5000 acres for his services as commissioner, and it might be matter of notoriety, where he intended to take his land. Any thing notoriety, as well one thing as another, may be called for in an entry, and will be good.
Overton, j. agreed in this opinion, so far as related to the point of notoriety, but conceived, that before the depositions could be read, it ought to be shewn that Tatum’s claim lay on Little Harpeth, that being the most prominent call, could not be abandoned.
Humphreys, j. Said he was not to be understood as giving an opinion as to the preference of calls ; upon that point he could give his opinion to the jury.
The depositions being read, shewed, that Tatum's claim of 5000 acres on West Harpeth river, was notoriously known previous to Reid’s entry.
The testimony on the part of the plaintiff having been closed, the defendant’s counsel stated, that they wished to bring to the notice of the court, a defect in the plaintiffs action, which they conceived fatal, and if correct in this position, it might save time.
The grant of the plaintiff appears to have been amended in 1806, by inserting a date, and the counter signature of the secretary, neither of which appeared in the grant before this amendment. There was in fact no grant until this amendment was made. And this ejectment having been commenced in the year, 1805, before there was any grant obtained, cannot be maintained.
Overton, j. and Humphreys, j. The case of Philips and Campbell's lessee vs. Irwin, in the federal court, decided, that the counter signature was not essential to the existence of a grant. And no person will contend, that the date is an essential part of a deed.
Campbell, j. The objection in my opinion, is fatal.
White, e contra.
By law a copy of this plat must be filed in the secretary’s office of North-Carolina, and that would be better evidence of an alteration, than parol proof. Beside, the plat is not an essential part of the grant.
On the part of the defendant was offered evidence to prove, that Reid’s entry was put on the record of entries, long after the date expressed in the entry ; a blank having previously stood in the entry books, when this, and perhaps some other entries were inserted ; and for this was cited 1 Str. 210.
Humphreys, j. and Overton, j. were of opinion that the evidence could not be received to contradict the record of entries. If this were allowed, every title in the country might be endangered; the design of the legislature in establishing records of entries, would be evaded, and incalculable mischief would ensue. Proof may be adduced by the oath of the keeper of those records, shewing their condition, whether legible or not.
Randal M’Gavock, esquire, to whose custody the record of entries had been committed, was sworn ; he stated that part of the defendant’s claim, or Mabane’s right, stood recorded in page 1st. viz. 5200 acres, and the whole 7200 acres, in page 20, and that the plaintiff’s entry stood recorded in page 7.
The defendant’s counsel discovered a defect in the plaintiff’s grant, which they begged leave to state.—From the plat of survey, as annexed to the grant, it appeared that there was an alteration in it. John Donnelson surveyed the land as appears by the plat; as it originally stood, the survey was made by virtue of the first entry for 5200 acres, part of the 7200 acres, and it had been altered so as to make it refer to the entry made in August. The plat is an essential part of the grant, and any alterrtion in it vitiates the whole grant, in the same manner it would any other deed. They hoped Donnelson, the surveyor, would be permitted to give evidence of this alteration.
Per Curiam. This evidence cannot be received ; a copy of the plat on file, would be better evidence *403 of this alteration, than any parol proof. Indepedent of this consideration, the alteration of a grant, is not similar to the same thing in a deed. The state having granted the land, an alteration does not affect the grant, which is of record.(a) The interest conveyed, is not thereby affected. We do not give any decisive opinion, whether the plat is an essential part of the grant or not.(b) If, however, the plaintiff's counsel should think this last point is material, they can bring it again before the court.
Dickinson for the plaintiff,
read the several acts of assembly respecting military lands; he should rely on his entry, which was older than the defendant‘s grant. It is true, that it calls to lie on Little Harpeth, when it lies on West Harpeth; but this cannot invalidate the claim, because our entry contains certainty enough, if the call of Little Harpeth were rejected. Throw out that call altogether, and then it will stand as calling to join Absalom Tan tum’s claim; this we have proved was a notorious call. The place where Tatum claimed, was as well known, as any river, creek or place in the whole country. This principle will not interfere with the opinion of the court in Weakly’s lessee vs Wilson, at Clarksville. There, the calls were of equal notoriety; here Tatum’s claim is the most prominent call in our entry. They are repugnant, and therefore both calls in this entry cannot be complied with, one must be rejected. Hughes Rep. 43. Tatum’s claim being the most prominent call, we must adhere to that, and reject the water course, Little Harpeth, which I admit lies ten miles from the land in contest. There is no authority which compels us to believe,that a water course shall have more notoriety attached to it, than a cabin, or another man’s line. In this case it has been proved, that Robertson, the locator, and consequently the agent of Mabane, knew where Tatum’s claim lay; there was, therefore, as complete notice as the legislature designed, by the entry; it should have the same effect, as if the entry contained unexceptionable notice. 3 Atk. 646.
Beck, Campbell, Haywood and White for the *404 defendant. The entry of the plaintiff is defective in point of description, and it was a principle of law, that notice of that which is illegal, shall never have any effect.(a) It is the entry, and not personal notice the court must advert to. An entry, in a court law, is never permitted to do away the effect of an elder grant, unless it be so special, as not to require aid from the grant, or any extraneous circumstances. In fact, agreeably to or acts of assembly, it is a fraud in a younger enterer to survey, or get a grant to the prejudice of an older one—that is, to survey or get a grant before the older enterer has surveyed and obtained a grant. (a) Surely then,the legislature could not design,that it should be construed a fraud, unless the entry were special. This would make a person guilty of fraud, without intention, which would be the case, if the entry did not give notice. Upon the positions assumed by the plaintiff's counsel, they cannot claim the land here, because they have not proved Tatum’s line, which their entry calls for.
By the first act of assembly which has been read, the legislature declared, that officers and soldiers shall be entitled to bounty lands, but no mode is pointed out. The subsequent acts pointed out a mode for obtaining grants, &c. Though the cause had been under discussion nearly two days, it depended on a few simple principles, when stripped of unnecessary matter. We are in possession, have the oldest grant, and must hold, unless the plaintiff can shew our grant is invalid. They have not attempted any thing but shewing an older entry. The acts of 1786, c. 20, and 1787, c. 23, furnish the only ground for declaring a grant void in a court of law ; these acts speak of special entries. Is their entry special ? It was determined by the court in the case of Kerr vs. Porter, (a) that whether an entry be special or not, was matter of law.(b) It has been proved that West Harpeth is five or six miles above the place where Tatum’s claim was understood to lie.—Suppose this were little Harpeth, the entry would not be special, and therefore, their entry does not fall within the purview of the acts of 1786,c.20,and 1787, c. 23. We have gone far enough in intrenching up *405 on the ancient rules of law, as against the oldest grant ; but surely we must construe the act strictly, else endless confusion will arise. Natural calls in entry will remain, when artificial ones will decay-hence, the preference of natural to artificial calls. They are more certain and permanent, and if one is rejected, it must be the artificial.
How comes it that Absalom Tatum’s line is so notorious ? It was not on any book of record at the time one entry was made. It was only known where Tatum intended to take his land, by the company who were with him in the woods. To bring the case within the acts of 1786 and 1787, the entry must not only be special,but the oldest; now it is evident their entry was not the first—our first entry is on the first page of the book, theirs on the seventh.
It is manifest our entry was put on the record first, by its being first placed on the book, and therefore should have preference.
Mr. Grundy observed, that a witness he had been expecting, had arrived, and he wished to introduce him.
Per Curiam. Campbell, j. and Overton, j. This cannot be done after the arguments have commenced, nor at any time out of order, except by leave of the court.
The defendant’s counsel in continuation. This case in principle is of much importance. We have the oldest grant,and are in possession; how are we to be postponed ? only by the acts of 1786, c. 20, and 1787, c. 23. This case must be examined, as it was understood at the time the defendant’s entry was made,* The plaintiff's entry is vague, in calling to lie above Absalom Tatum’s line. The entry in this respect might be complied with,and the land surveyed many miles above Tatum’s line.
It has been proved, that Little Harpeth river, which is also called for, was as notoriously known as Cumberland river; there never was known to be any other Little Harpeth river, except the one known by that name at this day, and no proof that the wa *406 ter course, on which this land lies, was ever known by the name of Little Harpeth. Yet we are told the other side,that Absalom Tatum’s line(which by the by had no existence when both entries were made) is to identify their claim—this entry is certainly vague. Little Harpeth river is ten miles from this land. Suppose a man makes an entry to lie on the waters of Cumberland river, it is admitted on all hands that such entry would he as none. Will any court of justice permit the locator to come forward and swear that he intended it to lie at a particular place, and upon this ground make it valid? it has been insisted that our locator, Robertson, had notice where Tatum’s claim lay, and thence it is argued, ho is bound to take notice of Reid’s—this is certainly not correct for many reasons: Reid does not call to adjoin Tatum, and if Robertson knew of Tatum’s, it would not thence necessarily fellow, that he should know of Reid’s. Where notice is allowable, no person shall be affected by it, unless by some instrument or paper, in which he has an interest, and consequently is informed, by its referring to some other paper, (a) The legislature having prescribed notice by entry, no proof of any will be received.* Most persons think, we have gone at least far enough when we admit an entry to compete with a grant. Surely it never will be allowed that any proof, less than that of record, shall destroy a grant. On caveats, which is an equitable proceeding, and in chancery parol evidence may be received of notice, but even these courts are very cautious.
In the course of this argument were cited by the defendant’s counsel, Sneed’s Rep. 91, 238. Wilson vs. Mason, 1 Cranch, 45 to 100. Hughes Rep. 1.
Grundy in conclusion. There is no necessity for recurring to our grant, as the defendant’s grant is certainly void ; the jury will have it with them, and will be best able to judge of this; it has been erased and altered—though good when made, it is now shamefully defaced, and rendered invalid.(1) The first entry of the defendant, for 5200 acres, certainly cannot give any right, and the fraudulent alteration *407 of the grant destroys its effect. As to the place of Reid’s entry on the books, it was no fault of his, but of the entry-taker. Our entry was made before the act of 1786, so much talked of. It must derive its efficacy under the laws existing at the time it was made, and if good by those laws, it cannot be rendered invalid by retrospective previsions. When our location was made, there was no law requiring that it should be entered on a book; it might be made on the back of the warrant, or on a separate piece of paper ; It was sufficient if the surveyor could understand it. It has been argued that Absalom Tatum may have another claim on Little Harpeth, which our tract ought to adjoin. If this were the case, the defendant ought to shew it, otherwise it will not be presumed. The argument that natural calls, must in all cases hold a preference over others, however notorious, is certainly not correct ; suppose there be but one station or fort in the country,and an entry were to call to adjoin it, and lie on a branch of a particular name, when a branch of that name was many miles off ; could any man say, that the fort was not the most prominent call ? so I think with respect to the case before the court. Tatum was a public officer, with whom every person had business—this was his claim for his public services, as notorious as any other call that could have been devised, it not more so. Independent of the entry, there was personal notice, and it is immaterial how notice is given ; it is the same thing in reason. In Virginia and Kentucky, an entry is required in all cases, which is not our law.
Mr. Grundy expatiated at length on each of these points, and concluded by observing, that there could be no doubt of the legality and justice of the plaintiff's claim.
Campbell, j. The entry should be special on the face of it, and did not seem to him that this entry was so ; if the entry is not special, the oldest grant must prevail.
Overton, j. There is known to our law two *408 modes of acquiring titles to vacant land. With and without an entry ; in this case however, entries are referred to. The defendant has the oldest grant,and in order to overreach this, the plaintiff recurs to his entry. It seems to be the general understanding,that agreeably to the laws of North Carolina, warrants could not be divided, and part entered at one place, and part at another. I shall say but little respecting this circumstance in the claim of the plaintiff ; conceiving it not essentially necessary. Nor is it material to consider in what manner the plaintiffs entry should be made, further than to remark, that the subsequent acts of 1786. c. 20. and 1787, c. 23 could not render the entry invalid, if it were good before.The acts of 1777, and 1783 required entries to be made and so did the act regulating military claims. But none of these acts have defined what shall constitute a special entry. It is left for the court to collect the general view the legislature had in requiring an entry. Now, it seems to me, that the intention of the legislature, was, to apprise the surveyor and others where the land lay, so as to enable the surveyor to survey and others to make entries. All the acts respecting the appropriation of vacant lands, contemplate the idea, that as the surveyor was directed to survey the oldest entry first, that the governor would issue a grant upon the first survey, before a younger one. So that previous to the act of 1786, c. 20 we find no trace of an idea with the legislature, that they suspected an older grant would, or had issued on a younger entry.
The idea of the law is, that the surveyor shall survey all entries, without calling on the enterers, to shew their claims, as is evident from the act of 1783, c. 2. s. 19. as well as several other clauses to the same effect. The law did not contemplate, that it was necessary for the surveyor, to call on the caterer, to shew where the land lay. It thence results, that the entry should be sufficiently special, to enable the surveyor, to know where to survey it; and if others have, or wish to make entries, it ought to have such reasonable specialty, as would enable them to steer clear of it; and to call on the surveyor to run it out first, so as to be able to avoid it. *409 If it has not these specialties, it is as no entry at all. And no subsequent enterer ought in equity to be affected by it. The legislature acted on this equitable idea, in their acts of 1786, c. 20, and 1787, c. 23, but in that, they have not told us, what kind of an entry shall be deemed special. Reason must tell us that it is such an entry, as would inform the surveyor, and the world, at large, where the land in general, was intended to lie. Not so special that the boundaries might be known by the entry. Nor was at necessary to be thus precise when the surveyor is directed to survey the oldest first: And from all the statutes, it evidently appears, that he was not to run into older claims, but bind on them. But it is urged, that if the entry should be esteemed insufficient, that the same end is obtained, by the notice which the defendants locator had. I entirely agree with the argument of the defendants counsel, in this respect that the courts of law have gone far enough, in permitting an entry to impeach a grants I might say too far, but the law is considered otherwise. The act has prescribed what this notice shall be, an entry, and we are not authorised to admit a substituted.* In equity in some cases, and on caveats, it is done, but even then with great care. The last entry of the defendant supersedes the first ; and it must therefore be thrown out of the case. The plat annexed to the grant, does not seem to make an essential part of the grant, and therefore the alteration suggested, cannot vary this case.(a)
The plaintiff has the oldest grant, and the most important inquiry in this case, is, whether the entry of the plaintiff is a special one, as contemplated by the act of 1786, c. 20 and 1787,c. 23. If it is, according to our practice, the plaintiff must prevail. It is said that the acts of 1786, c. 20 and 1787, c. 23. must as to enterers be construed strictly. What is intended by this part of the argument of the defendant, I am unable to say, If the argument supposes that the act designed to introduce a greater degree of strictness, than what had been usually attached to an entry, I cannot agree with it; there is no evidence in the act itself, shewing that it was designed, as introductive of a new rule, as to the nature of en *410 tries. Previous acts as well as the general sense of society had produced a settled distinction between special and vague entries. Both have been defined, and if the legislature had not legislated upon this subject, none but a special entry could have any effect. This act I consider, as declaratory of former principles, and the rule of strict construction, does not seem to apply. Particularly when we consider that the legislature had discovered by various antecedent acts, their anxious solicitude, that an elder enterer should procure a title, in preference to all others.
In relation to the specialty of the plaintiffs entry, it has been contended, that it possesses on the face of it two special calls. On little Harpeth river, and to lie above Tatums line. It is admitted that these two calls, cannot be complied with, as the nearest part of little Harpeth is at least ten miles from the place in dispute. Supposing the call, to lie above Tatums line, to be sufficiently special, the question occurs, whether the other call can be abandoned. If there are different calls in an entry, and some be more durable and certain than others, it seems to me that the subordinate calls may be abandoned, if the others are sufficiently descriptive. In making this discrimination we seem to conform to the character of the human mind, which is first and most steadfastly attracted by the most notorious & prominent objects. Where one or the other call must be abandoned, in general, a natural call would obtain a preference over an artificial one. Rivers, Creeks, Lakes and Mountains, are in the order of nature more prominent, than branches, springs lines and marks. If one or the other must be rejected, the enterer, ought to adhere to the one of the greatest consideration. In this case but little doubt can exist, that little Harpeth river is a more prominent call than Tatums line, admitting that it existed. A person seeing Reids entry could not tell but Tatum might have other claims on little Harpeth. He could never suppose, that the entry was intended to adjoin a claim of Tatums on west Harpeth. It has however been insisted, that it was incumbent on the defendant to shew that Tatum had a claim on little Harpeth, if they intended to impeach the plaintiffs entry *411 on this ground. This position is believed to be untenable. The entry in itself, should contain certainty, and it was incumbent on the enterer, to word his entry in such a manner, as to avoid ambiguity—An entry should never be so construed, as that it might enable a person to hold at more than one place, There may be many tracts of Absalom Tatums on little Harpeth, for aught the court or any other person knows. If this were the case surely the plaintiff could not adjoin where he pleased. Suppose Tatum had one tract on little Harpeth, and this claim of the plaintiffs had been surveyed adjoining it above, there he might claim without the possibility of interruption. And as this might have been the case, it would be unreasonable, that, an enterer, by the ambiguity of his entry should lay a subsequent one under the necessity of enquiring whether Tatum had a claim on little Harpeth, when nothing in the entry could reasonably induce such an enquiry. Under this view of the subject, it seems that the entry is not such as to overreach the defendants grant.
Humphreys j. A practice has obtained to permit the entry to be given in evidence against a grant ; this seems to be founded in principles of law ; the entry is of record, and may he brought into view, as well as the grant; the principle seems to arise from a fair construction of the sets of 1786. c. 20. and 1787, c. 23. These acts declare that a grant obtained on a younger entry, to the prejudice of an older one, shall be void. Thus far he was willing to go in a court of law, but no further ; and consequently personal notice must be laid out of view. He agreed with the opinion last delivered, that the erasure complained of, supposing it to exist, would not vacate the grant. In addition to that opinion he would further state a distinction which seemed clearly to exist between a grant, and an ordinary bond. In the first an estate is vested, An erasure therefore, will not divest an estate once vested. In the other it bars all remedy, and destroys the effect of the instrument. Proof of notice, except from the face of the entry, cannot be received, in a court of law. The entry being matter of record, can *412 only be resorted to on the ground of notice. It has been contended, that the plaintiffs entry, could not, be considered as such, until it was put on the books, which was after the act of 1784, requiring locations, to be entered of record. It is worthy of remark, that the acts of 1786, and 1787 only speak of entries and not locations, and there certainly may be a distinction between them. Before the act of 1784, requiring an entry book to be kept of military lands, there might be locations, which it would seem cannot come into view under the acts of 1786 and 1787.
Whether an entry be special or not, must depend upon the entry itself, and cannot be made better or worse by parol proof of what the enterer intended. It is matter of law, and not of evidence.* The ground of all proof respecting the calls of an entry must be laid in the entry. The entry must shew the place called for, and parol or other proof will be received, to shew that the place in its situation name, &c, agrees with the calls of the entry ; but where an entry is vague and uncertain, proof cannot make it good. Whether a grant covers a place called for is also matter of evidence.
It is certain, when all the calls of an entry cannot be complied with in a survey, that some may be rejected without prejudicing the right of the enterer and the most prominent calls should be adhered to. In the case before the court, there seems to be much dispute, whether Tatums line, or little Harpeth, was most prominent. By a reasonable and not a strained construction of the entry, it would seem to me, that the call to lie above Tatums entry, means adjoining it above. (a) But whether Tatums line, or little Harpeth, be most conspicuous, he did not feel decided; but was inclined to think, there were many cases where, it was the proper province the jury to determine that point. This he believed one those cases. It might be that Tatums claim was more conspicuous than little Harpeth; this is a fact which the jury must ascertain. It has been urged as an objection against the plaintiffs entry, that Tatums line was not in existence, and therefore this call has no effect. I am not of this opinion, Tatum was entitled to 5000 acres of land as a *413 commissioner, under an act of assembly, and I see no distinction between this call, and the common call of another persons line, after an entry, and before a survey. In either case such a call would not be vague.(a)
Mistrial.

 M'Clelland's lesse vsDunlap,S.C. E. & A. Knoxville, May, 1812. acc.

 In the case of Polk'slessee vs. Hill & al. federal court Nashville, June, 1811,it was decided that the plat did not make tum’s essential part of the grant.

 2 Hay. 60. 1 Cr.45.

 1786, c. 20, 1787, c. 23.

 Ante pa 353

 3 Cr.186 4 Dall. 88. 3 Binney, 329.

 See 1 Cr. 299, 304, in n. Ib. 309. 3 Johns.392. Maryl.Rep. 212, 233. Camp. R. 22.

 See 2 Binney, 455

 See 1 Cr. 71.

 Lofft's ed. Gilb.108-9. Bull. N. P. 267.

 1 Cr. 71.

 Polk's lessee vs. Hill & als. acc.

 See 3 Cr. 186. 4 Dall. 88.

 Allison’s lessee vs. Roper, Mero, May, 1803. Per Campbell and White judges. Accordant.

 Polk’s lessee vs. Gentry and others. Ante, p. 269.