PeR Curiam.
 

 On the 11th of April, 1797, an entry was made in the office of the surveyor of military lands in these words: “ Redmond D. Barry, of the heirs of Raymond Jones, 640 acres, joining an entry made by William Nash for Aquilla Sugg, on the east fork of Stone’s River, warrant No. 4,223, location No. 7,183.” The location was made by William Nash, who before that time had made several entries for A. Sugg on the east fork of Stone’s River. R. D. Barry claimed his land by virtue of the entry before recited, on the east of a tract of 1,000 acres, which had been entered by Nash for Sugg, and granted to him 7th of January, 1789 ; the greater part of the land in that neighborhood and as well as that adjoining Sugg’s other entries, were covered by older and better claims. The several entries of Sugg appear to be sufficiently special. William Nash had frequently said to sundry persons, that the land which is the foundation of the present action lay at the place now' covered by Barry’s grant. The complainant, William Mitchell, agreed to purchase * from Barry, and entered into articles with him 16th of November, 1802, stating therein that he had that day purchased of R. D. Barry a tract of land, containing by estimation 180 acres; if more or less,- to pay or deduct at the rate of $2 per .acre; lying on the east fork of Stone’s River, joining Edwards’ and Sullins’; for which he agreed to pay $2 per acre by the first of February then next. Barry bound himself to convey the land as soon as a patent issued for the same, and to use his
 
 *377
 
 endeavors to procure the same as soon as possible; and if the land should be lost by any means, then to convey to said William other land of equal quality and quantity, and pay for such improvements as might be made. To secure' the payment, William Mitchell, with Mark Mitchell his security, gave their note single for $860 to Barry, payable first of February, 1803.
 

 William Mitchell soon after took possession of the land, made considerable improvements, and in August, 1803, sold to William Searcy for $3.50 per acre, $300 in cash, the residue in property the first of January then next; title to be made as soon as he gets it, and to use all lawful diligence for that purpose; if the land should be lost, the purchase money to be refunded and the improvements to be paid for. William Searcy took possession, and has continued thereon ever since, and made large and valuable improvements. Mitchell or Barry not having procured a grant for the lands, Searcy procured it to be surveyed for himself, as an occupant claim under the act passed in 1807; survey was made 27th of May, 1808, and entered by applying a warrant thereto on the last day of. December following. A grant issued the 28th of February, 1809, for 261 acres, that being the quantity not covered by older and better claims'.
 

 The warrant on which Barry’s entry was made, was adjudged valid by the board of commissioners, 7th of June, 1807. He procured a survey to be made 7th of * July, 1809, pursuing the same lines in Searcy’s grant, and covering the same land ; a grant to him issued 28th of January, 1810.
 

 The bill single for $360 executed by William and Mark Mitchell, was assigned to T. Dixon, who recovered judgment against them in November, 1807. They filed their bill in November, 1808, alleging, that Barry had procured no title to the land, or used any exertions to procure one; that his entry is too vague and uncertain to secure that land, and that Searcy had surveyed it as an occupant claim; that at the time of the purchase and of the commencement of the suit, they had no knowledge of the defects in Barry’s entry, and prayed an injunction; which was afterwards dissolved and the money paid, and also damages, &c., for his failure to comply with his contract.
 

 Barry insisted in his answer that his entry is good, that the land is sufficiently described, and was well known to the complainants,
 
 *378
 
 and all acquainted in that part of the Country ; and no other claim for the land except that of Searcy’s, who cannot hold by occupancy, as the possession was in consequence of the sale made by Barry; that he will shortly be in a situation to obtain a grant, and is fully able to satisfy all damages.
 

 To this bill an amendment was filed in 1812 by William Mitchell, stating that Barry had procured his grant for 263 acres, and alleging he is able to make a good title, which the complainant is willing to accept; that he had paid for 180 acres, and is ready and willing to pay for the residue, on securing a good title; but no conveyance has ever been made or tendered ; prays that Barry may exhibit his title, and, if good, be decreed to convey with such covenants as the articles require.
 

 To this defendant answers, and exhibits his title as before stated; that he informed William Mitchell after his grant issued, who promised to pay for or secure the payment for the surplus land, but has failed * to do it, and is in embarrassed circumstances ; that a conveyance was tendered to him and refused ; but is still willing to make such conveyance as the court may direct, on receiving payment for the surplus.
 

 Redmond D. Barry filed,, in November, 1814, a cross-bill against William Mitchell and Searcy, in which he sets out his own title, and that of Searcy as before stated ; that Searcy purchased with a full knowledge of the former contract, and has never been interrupted in his possession; that he tendered a deed to Mitchell, but it was refused under the pretense that the entry was vague and uncertain; states that Mitchell has not paid Searcy for the land ; and prays that Searcy’s deed may be decreed void; that they may be compelled to accept the deed tendered, and Searcy be compelled to pay |166, the value of the surplus at $2 per acre, with interest from the date of the contract.
 

 Mitchell’s answer is not materially variant from his statements in his bill. He admits the tender of a deed in 1811, but not containing such covenants as by the original agreement. ought to have been inserted ; says that Barry concealed from him the knowledge of the uncertainty of his entry, which was not discovered by him till afterwards.
 

 Searcy in his answer insists that the entry of Barry was vague and uncertain, as Sugg had at least four entries of land on the
 
 *379
 
 east fork of Stone’s River, &c.; states that he never made any contract with Barry, and had no knowledge of the entry under which he claimed till 1807; and being advised that it was vague and uncertain, and could not hold the land, he as an occupant, and to secure the land to himself from any entries others might make, procured a survey to he made and a grant to be issued in his own name, and with hi’s own funds ; otherwise he was in danger of losing the land, and the benefit of large and valuable improvements which he had made; insists that his title to the land is good, and that he is not in justice or * equity under any obligation to pay anything to Barry or Mitchell; admits that he has not paid to Mitchell more than $480 of the price of the lands.
 

 The principal question for the consideration of the court is, to determine from the facts and circumstances detailed, whose title to the land is best, that of Barry or Searcy.
 

 Without recurring to the numerous definitions of vague and special entries as found
 
 passim
 
 in Cooke’s and Tennessee Reports, one position must be admitted to be correct, and to enable the grantee of a younger grant to claim priority from the date of his entry, the entry must be for the same land covered by the grant. How is this to be ascertained ? It must be from the words of the entry, together with such testimony respecting the objects called for or described as will ascertain the fact. When this is known, the surveyor has by law considerable latitude of discretion in determining the manner of surveying. The decisions of the courts have sanctioned that latitude of discretion customary among surveyors, to as great extent at least as the law will permit.
 

 Let this entry be examined; it is to join an entry made by Hash for A. Sugg. If on proof it had appeared that Sugg had but one entry of that description, it would have been certain that it must join that entry; but here by the proof it appears that Sugg had four entries on the east fork of Stone’s River. How shall it be ascertained to which of these entries that of Barry must join ? It is said the locator has given evidence of his intention. So far as I recollect, the intention of the locator, not expressed in the location itself, has never been adopted as a mode of ascertaining the locality or specialty of an entry. It would be attended with pernicious consequences (Tennessee Rep. 173), if our titles to land
 
 *380
 
 should be made to depend on the proof or intention of men whose memories are frail, and who might sometimes be actuated by corrupt motives. * Discarding the proof of intention, how will this entry appear ? It is to join some one of four entries. After the particular entry is selected, it may join it on the east, west, north, or south, and from the words of it, be equally good for a dozen places at least, and consequently good for no place.
 

 In
 
 Reed's Lessee
 
 v. Dodson, Tenn. Rep. 408, 409, Judge OveRTON, in delivering his opinion, says, that entry should be sufficiently special to enable the surveyor to know where to survey it, and if others have or wish to make entries, it ought to have such reasonable specialty as would enable them to steer clear of it. If it has not these specialties it is as no entry at all, and no subsequent en-terer ought in equity to be affected by it. Again, in speaking of a subsequent notice, he says, the act has prescribed what this notice shall be, an entry; and we are not authorized to admit a substitute. In equity, in some cases, and on caveats, it is done, but even there with great care ; and, in page 411, the entry in itself should contain certainty, and it was incumbent on the enterer to word his entry in such a manner as to avoid ambiguity. An entry should never he so construed as that it might enable the person to hold at more than one place. The same principles are fully recognized by the court in
 
 Beard
 
 v.
 
 Trimble's
 
 Lessee, Cooke’s Rep. 282;
 
 Mitchell
 
 v. Nash, Co. R. 238.
 

 It is unnecessary to say anything about notice. The defendants to the cross-bill deny that they knew anything about the uncertainty of Barry’s entry till shortly before Searcy entered the land. It has not been proved that they did. They knew that Barry claimed land there by entry, and that Nash, the locator, said that was the place.
 

 It is also insisted, that there was no other vacant land on the east fork of Stone’s River, adjoining any of Sugg’s entries. This is not satisfactorily proved, and if it was, I am not prepared to say that such proof would make the entry good. Besides, by the words of the entry, * it cannot be necessarily inferred that Barry’s land was to be on the east fork. Sugg’s entry which it calls to join is described as lying there.
 

 From this view of the case, Barry’s grant cannot be considered
 
 *381
 
 as having a priority from the date of his entry so as to prevail against an older grant. The principle before stated we believe to he correct in general. Yet these defendants to the cross-bill stand in a different situation from others. Mitchell purchased from Barry and took possession under him. He sold to Searcy, and gave him possession. Barry was bound to make a good title, if the land was not taken away by better claims. The possession thus acquired must be considered as the possession of Barry; and the title procured by Searcy, under the act of 1807, ch. 2, § 36, giving a preference to occupants, must in equity be considered as inuring to the use of Barry, in conformity with the principles recognized. In the case of
 
 Searcy
 
 v. Kirkpatrick, Co. R. 211, no censure or blame can be imputed to Searcy in procuring this title. He was settled on the land, had made valuable and permanent improvements; he had suffered the time allowed by the first occupant law of 1806 to pass by. If he had permitted the period, allowed to occupants by the act of 1807 to elapse, any other person might have entered the land and procured a grant, and turned him out of possession. Nor could Barry, claiming under an entry'so vague and uncertain, have prevented it. The conduct of Searcy was a benefit to all the parties in thus securing the land. But from the relative situation in which he was at the time, that actual possession which enabled him to get a title was founded on a contract, and in equity must be considered with a 1’eference to the contract, and not his own exclusively.
 

 Colonel Searcy’s grant, though dated in 1809, will, in equity, have a priority as against an entry made by others since the 12th of September, 1807. The court are not willing to deprive him of it, and in lieu thereof * compel him to accept of another, which is dated in January, 1810, and can have no effect prior to that time.
 

 It appears from Searcy’s answer, that he yet retains in his bands a sufficient sum of the purchase money which he agreed to pay Mitchel, to effectuate the purposes of equal and impartial justice between all the contending parties.
 

 ' Let a decree be made that the defendant Searcy pay to R. D. Barry $166, the sum agreed to be paid by Mitchel for 83 acres of surplus land, as ascertained by survey, with interest from the 27th May, 1808, the first time the surplus land was ascertained; the
 
 *382
 
 court have no proof it was known sooner ; hut be allowed to retain out of that sum a reasonable allowance for his expenditures in procuring a grant, with interest thereon from the 31st of December, 1808, the residue, if any, to be paid to Mitchel; and that the complainants pay the costs of the original bill, and William Searcy pay the costs of the cross-bill. Redmond D. Barry, retaining his grant, can, by the existing laws, withdraw his warrant, and get a certificate in lieu thereof, and apply it to his own use.
 

 See, as to
 
 notice, Winchester
 
 v.
 
 Gleaves, 3
 
 Hay. 213, and note
 
 sub fin.
 
 As to
 
 void entry, Reid v. Dodson,
 
 1 Tenn. 396. As to
 
 buying in better title, Searcy
 
 v.
 
 Kilpatrick,
 
 Cooke, 211;
 
 Id.
 
 1 Tenn. 421. See King’s Digest, 7953, 7972, 7980, 11,852.