WADE M. JACKSON and others vs. SAMUEL HODGES and others.

## April Term, 1875.

LIMITATION OF REAL ACTIONS—TIME RUNS AGAINST HEIRS OF LAND SUBJECT TO UNALLOTTED DOWER.—The existence of a widow's unallotted right to dower in land will not prevent the running of the statute of limitations against the heirs who have conveyed in fee their undivided shares of the land subject to the dower, especially where the dower right has been conveyed to the same purchaser.

SAME—ADVERSE HOLDING UNDER A DEED FROM ONE WHOSE TITLE WAS DOUBTFUL.—Where land descended to seven heirs, five of whom conveyed their shares, each describing his share as one-seventh, and a sixth undertook to convey two shares, claiming, with the knowledge of the others, one share under an informal will of the seventh heir, these facts being conceded in the bill and established by the complainant's evidence, it was held that the statute would run in favor of the purchaser as to this share.

DEED UNDER POWER OF ATTORNEY—CONSTRUCTION.—Where an attorney in fact, who is authorized by three heirs by separate powers of attorney to sell land, two of them describing the share of each as one-seventh, and the other describing his interest as consisting of two shares of one-seventh each, one as his own share, and the other as the share of a deceased heir devised to him by will, conveys by one deed the land described as "being the distributive shares" of the three heirs, naming them, it was held that the deed passed the title to the two shares thus claimed by one heir.

SAME—SAME.—A power of attorney to make "all such deeds of conveyance and of partition" to such lands as I am entitled to, authorizes a deed of sale as well as a deed of partition.

DEED—FALSE DESCRIPTION.—A false description in a deed, when there is enough otherwise to show the intention, will be treated as surplusage; as

where the grantors describe themselves as heirs of the father, when they were in fact heirs of the son who died after the father.

**HUSBAND AND WIFE—CONVEYANCE BY POWER OF ATTORNEY.**—A conveyance, under a power of attorney by husband and wife, of all the right, title, and interest of the husband and wife in land, will pass the estate by curtesy of the husband, and the children of the wife cannot sue for the land, after the death of the wife, if the husband be still alive.

*Shackleford & Helms* and *Bonner*, for complainants. ·

*Ed. Baxter* and *Thos. H. Malone*, for defendants.

THE CHANCELLOR:—Bill filed on the 4th of May, 1871, ostensibly to remove a cloud from the title of the complainants, as heirs or the descendants of heirs of Carroll Jackson, deceased, in and to lot No. 81, in Nashville, but in reality as an ejectment suit in equity for the recovery of said lot. The defendants have answered the bill without raising any objection to the jurisdiction of the court, and the case has been tried on its merits. The easiest and clearest mode of understanding these merits is by a historical statement of the facts in the order of time in which they occurred.

Craven Jackson died intestate in this county in 1820 or 1821, leaving a widow and one child, an infant of the name of Carroll Jackson. The intestate died seized and possessed of lot No. 81—the lot in controversy—and no other real estate, so far as this record shows. Carroll Jackson died a few years after his father, while still an infant of tender years. His heirs were his uncles and aunts—brothers and sisters of his father—seven in number, as follows : Wade M. Jackson, Dempsey P. Jackson, Thomas Jackson, Elbridge Jackson, Claiborne F. Jackson, Ann Hart, and Matilda Jenkins. At any rate, these brothers and sisters of Craven Jackson were all living at his death. It does not appear in what year Carroll Jackson died, but it is certain that all of his uncles and aunts named were living at his death, unless, it may be, Matilda Jenkins. It does not appear when she died. J. M. Shackleford, who married Mary T., the daughter and only child of Matilda Jenkins, in giving the heirs of Carroll Jackson, names Mary T. Jenkins as one of those

heirs, thereby implying that Matilda Jenkins was then dead. Elbridge Jackson, one of the heirs of Carroll Jackson, died in October or November, 1830, in New Mexico, having previously executed an instrument giving his property to Wade M. Jackson, which instrument was attested by one witness, and proved and admitted to record in the state of Missouri, where the parties resided, as a will, after his death. Nothing was done with it in this state, so far as appears.

The widow of Craven Jackson intermarried, a few years after his death, with one Roberts, and, upon the death of her son, Carroll Jackson, she set up a claim to a life estate in lot No. 81, as heir of her son, under the acts of 1784, ch. 22, § 7, and 1784, ch. 10, § 2. The heirs of Carroll Jackson brought an action of ejectment to test this claim, and the suit was decided in their favor by the supreme court of the state, in the month of March, 1833. The case is reported under the style of *Roberts and wife* v. *Jackson's Heirs*, in 4 Yerg. 308.

Previous to the final decision of this suit, to wit, on the 2d of March, 1832, Roberts and wife, by deed of that date, conveyed to A. R. Wynne, in mortgage, to secure him from liability as endorser for Roberts, several parcels of land, and, among others, "all their right, title, claim, and interest, both legal and equitable," in and to lot No. 81, with power of sale. This deed was registered on the 20th of September, 1832. On the 14th of August, 1832, Roberts and wife sold and conveyed lot No. 81 to A. R. Wynne, "for and during the life-time of the said Elizabeth Roberts." This deed was registered on the 19th of September, 1832.

On the 17th of September, 1832, Wynne sold and conveyed to the United States Bank "all the interest that he hath now, or may hereafter have," in lot No. 81, with covenant of general warranty. This deed was registered on the 26th of September, 1832. On the 15th of February, 1837, the United States Bank sold and conveyed to Augustus

Bass all its right, title, and interest "in and to the right of dower which Stephen R. Roberts and his wife, Elizabeth Roberts, late Elizabeth Jackson, and widow of the late Craven Jackson, deceased, held in and to" lot No. 81. This deed was registered on the 6th of March, 1839.

On the 24th of January, 1838, James M. Shackleford and Mary T., his wife, by power of attorney of that date, reciting that she, the said Mary T., is one of the heirs of her uncle, Craven Jackson, "who died without issue, leaving seven distributees, of whom the said Mary T. was one," appointed James O. Shackleford their attorney in fact to sell the share of said Mary T. in lot No. 81, in Nashville, "being one equal undivided seventh part of said lot," "subject to the right of dower of the widow of said Craven Jackson." This power of attorney was acknowledged by Shackleford and wife before the clerk of the county court of Fayette county, Kentucky, in which county they then resided, the privy examination of the wife being taken and certified, and was registered on the 27th of February, 1838.

On the 27th of February, 1838, James M. Shackleford and Mary T., his wife, by deed of that date, executed in their names, by their said attorney in fact, and reciting a consideration of $425 paid, and which consideration James M. Shackleford in his deposition says was paid to him, sold and conveyed to S. L. Allen in fee "all the right, title, and interest of Mary T. Shackleford and James M. Shackleford, being one equal undivided seventh part," in lot No. 81, "subject to the right of dower of the widow of Craven Jackson." This deed was registered on the same day.

On the 15th of January, 1839, Augustus Bass sold and conveyed to S. L. Allen, for $100, with special warranty only, his right and interest in lot 81, "being the dower interest" of the wife of Craven Jackson, deceased, etc. Registered 19th January, 1839.

On the same 15th of January, 1839, Wade M. Jackson, Claiborne F. Jackson, and Thomas Jackson, by Augustus Bass, their attorney in fact, sold and conveyed to S. L.

Allen in fee, in consideration of $1,714.28, "a certain tract, piece, or parcel of land, situate, lying, and being in the county of Davidson, in the town of Nashville, being a part of lot No. 81, and being the three distributive shares of Wade M., Claiborne F., and Thomas Jackson, heirs of Craven Jackson, deceased," with general warranty of "the before-recited land and bargained premises." Registered same day.

The power of attorney from Thomas Jackson, under which Augustus Bass acted, authorizes him to sell and convey "all my right and title in and to the real and personal estate of the said Craven Jackson, deceased, that I am possessed of as one of the surviving brothers and heirs of the said Craven Jackson." Registered January 15, 1839.

Wade M. Jackson's power of attorney to Augustus Bass authorizes him to sell and convey "all my right, title, and interest in and to a certain lot of ground situated and being in the town of Nashville and state of Tennessee; and I do, by virtue of these presents, appoint and make the said Augustus Bass my legal and lawful attorney to sell, convey, and dispose of all my right, title, and interest, as one of the heirs of Craven Jackson, deceased, in and to a certain lot of ground lying and being in the town of Nashville, Tennessee. I, the said Wade M. Jackson, do further appoint, ordain, and make the said Augustus Bass my lawful and legal attorney to sell and convey all my right and title in and to said lot of ground as the heir of Elbridge Jackson, deceased, who was possessed of an interest in the estate of Craven Jackson, deceased, previous to his, Elbridge Jackson's, death, who willed the same to me, the said Wade M. Jackson. I, the said Jackson, do hereby give unto the said Augustus Bass full and complete power to sell and convey all my right, title, and interest in and to said property," etc. Registered January 15, 1839.

Claiborne F. Jackson's power of attorney to Augustus Bass appoints him his lawful attorney, "for me, and in my name, to do and perform all such acts as may be necessary

for the settlement of the estate of Craven Jackson, late of Nashville, in the said state of Tennessee, and now deceased, so far as I am concerned as legatee, distributee, or heir thereof; and I do hereby empower the said Augustus Bass to demand, etc., give receipts, etc.; and, also, to make, execute, and deliver, in my name, all such deeds of conveyance, and of partition, to such lands and tenements as I am lawfully entitled to of said estate." Registered January 15, 1839.

Augustus Bass, we learn from Wade M. Jackson, was a brother-in-law of the said Wade M., a man of high integrity, and then a resident citizen of Nashville. He afterwards removed to Missouri, where some of the Jacksons lived, and, after a residence of a few years, removed to California, and there died.

On the 17th of January, 1842, Ann Hart sold and conveyed to S. L. Allen in fee, for the consideration of $428, "all the right, title, claim, and interest which she has in and to part of lot No. 81. * * * The interest hereby intended to be conveyed is the one-seventh part of that portion of lot No. 81 of which Craven Jackson died seized and possessed, and being the interest of the said Ann Hart, which descended to her as one of the heirs, legatees, or distributees of the said Craven Jackson, deceased." Registered February 5, 1842.

On the 10th of August, 1843, Dempsey P. Jackson sold and conveyed to James Johnson in fee, for the consideration of $400, "all the claim and interest that I, as one of the heirs of Craven Jackson, deceased, have in and to lot No. 81, * * * my interest and claim being one undivided seventh part of said lot, subject, however, to the dower right of the widow of said Craven Jackson, deceased." Registered August 24, 1843.

The purchasers of these several interests in said lot went into possession, under their deeds, at the date of their execution, and they and the persons claiming under them, down to and including the defendants and present owners,

have been in the continuous and peaceable possession of said lot, claiming the same adversely to all the world, without suit brought, until the filing of this bill on the 4th of May, 1871.

Mrs. Roberts, the widow of Craven Jackson, died in the state of Texas, in the month of August, 1870. It does not appear, as I have already stated, that Craven Jackson died seized and possessed of any land except lot No. 81 in controversy. In the conveyances of Roberts and wife to A. R. Wynne, already mentioned, executed in 1832, they undertake to convey, but as belonging absolutely to Mrs. Roberts, lot No. 27, in Nashville. There is not a particle of evidence in the record tending to show that this lot ever belonged to Craven Jackson, and if we could look outside of the record we should find from the case of *Roberts and wife* v. *Jackson's Heirs*, reported in 3 Yerg. 77, that this lot was sold by Craven Jackson in his life-time, and converted into personalty; that his administrators compromised with the purchaser, and surrendered to him his notes upon his conveying the lot to the widow and only child of Craven Jackson; that, upon the death of the child, Mrs. Jackson, then Roberts, by suit contested the right of the administrators of Craven Jackson to make this conversion of personalty into realty, she being the distributee of her son's estate as to personalty, but not his heir as to the realty, and that the supreme court held that the conversion was unauthorized, and that she was entitled to the lot as personalty.

It does not appear from any evidence in this cause, either oral or written, that dower in lot No. 81 was ever assigned to the widow of Craven Jackson. The witnesses all say they knew of no such assignment, and no record of an assignment can be found. The manner in which this dower interest is always referred to in the several conveyances made after the decison of the supreme court in March, 1833, is conclusive that there never was any allotment of dower. It is invariably spoken of as the dower interest, or interest

during life, in the entire lot, never of a definite part of the lot, or by metes and bounds, as it almost certainly would have been if actually allotted. It will be recollected that Roberts and his wife sell to Wynne this life interest of the wife before the decision of the supreme court in March, 1833. Previous to that decision Mrs. Roberts claimed a life estate in the whole lot, as heir of her son, Carroll Jackson. It was this interest that she sold to Wynne, the conveyance of the larger life interest including, necessarily, the lesser life interest in one-third as dower. After this decision the bank conveys to Augustus Bass, and this without general warranty, and he to Allen in like manner, only the dower right.

It is plain and obvious that it was a general dower right in the whole lot, not a special right in a definite one-third part thereof, which was sold by Roberts and wife, and which became vested in Allen on the 15th of January, 1839. Allen had previously, on the 27th of February, 1838, bought and taken a conveyance of the one undivided seventh interest of Mary T. Shackleford in lot 81, " subject to the right of dower of the widow of Craven Jackson." It is this general "right of dower" which is recognized in the subsequent conveyances—Allen, who had already bought it, taking care that the heirs should concede it. The allegation in the bill, that lot No. 81 had been assigned to Craven Jackson's widow as dower in his real estate, is denied by all the defendants, and not sustained by a particle of evidence. On the contrary, the facts developed conclusively demonstrate that it was not thus allotted as dower. For, in the first place, it is not shown that Craven Jackson died seized and possessed of any realty other than this lot; and, in the second place, if this lot had been assigned to her for life, in dower, the claim by her of a life estate, as heir of her son, would have been useless. She already had a life estate in it.

I am clearly of opinion that the complainants have not only failed to show the allotment of the whole, or any spe-

cific part, of lot No. 81, in dower to Craven Jackson's widow, but that the record conclusively demonstrates that there never was any allotment to her, in dower, of the whole or any part of said lot. The " right of dower," or " interest during life," of the widow, mentioned in several of these conveyances, referred only to her right to demand an allotment of dower, and was put into these deeds, not so much as the recognition of even her abstract right, as of the right of Bass, the general agent of most of the heirs, and of Allen, the general purchaser, under the conveyances of Roberts and wife, Wynne, and the bank.

I am also of opinion that the complainants wholly fail to show any contract between the heirs of Craven and Carroll Jackson and the widow, giving her a life estate in lot No. 81 after the termination of the litigation in 1833. She had already sold her life interest, whatever it might be, to Wynne, and such a contract would have done her no good. The making of any such contract is denied by the defendants, and the only evidence on the subject consists of a single answer in Wade M. Jackson's deposition, who says : " I never knew of any agreement or understanding between the heirs of Carroll Jackson and Mrs. Roberts, his mother, in regard to her having the said lot 81 to live on during her life." The witness adds that, having learned that Mrs. Roberts was complaining of him and his brothers, he wrote to her that he " would not trouble her, nor put it in the power of any one else, during her life," and he thinks two of his brothers wrote to her to the same effect. What the witness means, when the records show, and he admits, that he intended to sell, and did sell (and receive the purchase money), his interest in said lot 81, being his own one-seventh and the one-seventh of Elbridge, it were bootless to enquire. The letter, if ever written, was, in Hamlet's significant iteration, " words, words, words." There is nothing in the evidence to show any contract on the subject. And, even if there had been an oral agreement, it would have been a *nudum pactum*, binding on no one ; and, had there been a consider-

ation, the contract would have been void as to purchasers, for want of registration.

We have, then, this case: Allen becomes the owner, in 1839, of the widow's right of dower—a mere right, without " local habitation." During the same year he buys and takes conveyances of the distributive shares of Wade M. Jackson, C. F. Jackson, and Thomas Jackson; Wade M., in his power of attorney, expressly authorizing the sale of Elbridge Jackson's one-seventh and his one-seventh as his. share. Allen had previously bought and taken a conveyance of Mary T. Shackleford's share. And in 1842 he bought Ann Hart's share, taking a deed. In 1843 D. P. Jackson conveys his share to James Johnson. Allen and. Johnson have, therefore, duly registered paper titles to the seven shares of the seven heirs of Craven and Carroll Jackson as early as 1843, thirty years before the commencement of this suit. Dower never having been assigned, the title was in the heirs, and if they neglected to sue within. the time limited by the statute of limitations they would be barred, and the dower right also. *Carmichael* v. *Carmichael*, 5 Humph. 96. The widow, until assignment, has. no right of entry. *Tool* v. *Pride*, 1 Tenn. 234; *Guthrie* v. *Owen*, 10 Yerg. 340. The conveyance of the dower right to the heirs, or a purchaser from them, would, moreover, merge the dower right in the fee. *Ross* v. *Blair*, Meigs, 544.

These defendants having had by themselves, or those through whom they claim, seven years' adverse possession of the land in controversy, holding by conveyances purporting to convey an estate in fee, without any intermediate existing estate, and without any claim by action at law or in equity commenced within that time, are vested with a good and. indefeasible title in fee to the land described in their assurances of title. Code, § 2763. And this whether the deeds. were good, or fraudulent and void. *Vance* v. *Johnson*, 10 Humph. 214; *Clark* v. *Chase*, 5 Sneed, 636. Or whether they were properly registered or not. *Stewart* v. *Harris*, 2

Swan, 656. Unless there is something else in the case, then, this bill cannot be maintained.

But, it is said, the purchasers only hold conveyances from six of the heirs, each of them being entitled to, and generally describing their respective shares as, one undivided seventh, leaving one share of one-seventh undisposed of. It is true the grantors do describe their interest as one-seventh. But the record shows that Elbridge Jackson died in 1830, having left a will, which was duly proved and recorded as such in the state of Missouri, giving his property to Wade M. Jackson. It further appears that Wade M. Jackson, in his power of attorney to Bass, by whom the conveyance of his share was made, expressly authorizes him, in addition to his own specific share, to sell the share of Elbridge Jackson as having been willed to him. In the same power the said Wade M. Jackson thrice repeats the authority to sell " all my right, title, and interest in and to said property." In the bill Wade M. Jackson is made to say, and what he says as part of a joint bill is binding on all the complainants, " that on the 19th day of November, 1838, he executed a power of attorney to Augustus Bass to sell and convey his interest in a lot in the city of Nashville, in his own right, and also as the heir and devisee of said Elbridge Jackson, which he had as one of the heirs of Craven Jackson, * * * and when he executed said power of attorney he supposed he had a right to his said interest under said paper," meaning the will. In his deposition, taken by complainants, Wade M. Jackson tells us that his brothers and sisters knew of the will shortly after Elbridge Jackson's death, and adds : " I certainly did suppose I had the right to dispose of his interest in Craven Jackson's estate as fully as my own interest. My right was conceded as far as I knew at that time, and I never heard of my right being questioned until the commencement of this suit."

Upon these facts two conclusions are inevitable. One is that, as a matter of fact, Wade M. Jackson did undertake to sell and convey two shares in said lot—his share and

the share of Elbridge Jackson—with the knowledge of the other heirs, and, if those shares were conveyed, it was utterly immaterial whether he had a legal right to sell Elbridge's share or not. The conveyance and possession are enough for the defendants. The other is that, with such admissions on the face of the bill, and brought out by the complainants' own witness, and himself a complainant, a court of equity would hold all of the complainants estopped to deny their truth, and would hold, whatever may have been the legal rights of the parties at law, that these complainants, or their ancestors, all knew when these conveyances were made that Wade M. Jackson undertook to convey Elbridge Jackson's share as well as his own. *Lambert* v. *Hutchinson*, 1 Beav. 277 ; *Armfield* v. *Moore*, Busb. 158.

In the latter view a court of equity would never permit any of these complainants to set up a title in conflict with the understanding and agreement of all parties as to the rights acquired at the time. It was not wise in them to come into this court with such concessions on their lips. They should have gone into a court of law, where they might stand upon their technical legal rights. This court cannot listen to them.

But I am clearly of opinion that the conveyance of Wade M. Jackson, Claiborne F. Jackson, and Thomas Jackson, by Augustus Bass, their attorney in fact, when read by the light of the facts then existing, does convey Wade M. Jackson's entire interest in the lot, as then understood by the parties, and as he undertook to sell. The conveyance is of " a certain tract, piece, or parcel of land, * * * and being the three distributive shares of Wade M., Claiborne F., and Thomas Jackson, heirs of Craven Jackson, deceased." It does not say the three distributive shares of these parties *as* heirs of Craven Jackson, but the shares of these parties, being heirs. What are these shares? The powers of attorney show, and Wade M. Jackson's power shows, that the share claimed by him, and

authorized to be sold, was a double share. Evidence is admissible, not to explain the meaning of the words used, but to enable the court to apply the words to the land or interest sold. *Snodgass* v. *Ward*, 3 Hayw. 40; *Canal Company* v. *Hill*, 15 Wall. 94. And, beyond all question, the powers of attorney, in connection with the deed, may be looked to in order to ascertain what were the shares of the respective parties actually sold. And precisely as you would limit the share of Claiborne F. Jackson and Thomas Jackson to one-seventh, because it appears from their powers of attorney that such was their respective share, so you would extend the share of Wade M. Jackson to two-sevenths, because these are the interests which he expressly authorizes to be sold.

It is said that the power of attorney of Wade M. Jackson does not specify lot No. 81. Nor does it; but it specifies his interest in a lot in Nashville in which Elbridge Jackson had a share, as heir of Craven Jackson, and there was no other lot, as we have seen, of which Craven Jackson died seized and possessed, nor is it attempted to be shown that Wade M. Jackson had an interest in any other lot in Nashville.

It is also said that all these parties sell only their shares in Craven Jackson's estate, and, inasmuch as they were heirs of Carroll Jackson, and not of Craven Jackson, they sold nothing. But it is utterly immaterial to these defendants whether the grantors were heirs of Craven or Carroll, or neither. All that is material to them is the fact that the deeds purport to convey an estate in fee. It is of no consequence to them whether the grantors had an estate or not.

But it is scarcely necessary to say that it is an elementary principle in conveyancing that a false description will be treated as surplusage, if enough remain to ascertain the property sold. *Graham* v. *Dudley*, Cooke, 353; *Reid* v. *Dodson*, 1 Tenn. 396. The evidence renders it certain that none of these parties were the heirs of Craven Jackson, but they sell their one-seventh, or share, or distributive

interest in the land, and, if they have such share or interest, it passes, whether derived from Craven or Carroll Jackson. Besides, all the proof shows that these parties treated their interests as derived from Craven Jackson, and, as they had the right to describe the land as they pleased, the description is binding upon them, precisely as if they had chosen to execute the deeds by names other than their own. If the court can see that the name or description used was intended by the parties to describe a particular property, or a particular interest in property, it will hold the conveyance to be as effectual as if a more correct name, or a more accurate description, had been adopted. Thus, if I choose to sell my land as black acre, which everybody else calls white acre, there can be no doubt that the tract generally known as white acre would pass. This is upon the supposition that I have no land known as black acre. And that is this case; for here it nowhere appears that these parties owned interests in any land as Craven Jackson's heirs; if they choose to sell as Craven Jackson's heirs, there is no ambiguity, and no harm done by the misnomer.

It is insisted that the power of attorney of Claiborne F. Jackson did not authorize the attorney to sell his share in the land, and only authorized a conveyance for partition. I do not think so. The general scope of the power is to authorize the attorney to do all acts necessary for the settlement of the estate of Craven Jackson, and to receive the principal's share, and for this purpose to " make, execute, and deliver, in my name, all such deeds of conveyance, and of partition, to such lands and tenements as I am lawfully entitled to." The authority is double—to execute deeds of partition, or conveyances, if necessary, in the event of a sale for partition, such as was actually made.

It is also said that some of the defendants admit that dower was allotted to Craven Jackson's widow in lot 81. The defendants who claim an undivided seventh under James Johnson do say: " Respondents are willing to admit that dower was assigned to the widow in this lot, at least

19

she was entitled to claim it. Complainants charge it as a fact, and respondents know of no reason to deny it. They, however, suppose that the dower was assigned, if at all, according to law, and that the widow took possession of one-third in value of lot No. 81, the portion assigned to her, including the family residence." These defendants do afterwards emphatically deny that the whole lot was assigned to the widow as dower, and the only reason why they are less cautious in regard to a special assignment of dower is that, if it had been made including the dwelling-house, it would not have touched the part of the land now held by them. The language is not very guarded, but, when examined, it does not amount to the concession of a fact, especially a fact as of the knowledge of the defendants. It amounts only to this : You assert that dower was assigned, and we, without knowing anything about it, are willing to concede that it was assigned as charged by you, or " at least she was entitled to claim it." I do not think, in the event which has occurred—namely, the total failure of the complainants to show that dower was assigned at all—that this can be considered as a positive admission estopping the defendants from having the benefit of the truth.

All the original bargainors, who were of age and *sui juris* at the time of their several conveyances, and those who claim under them, are, under the foregoing conclusions, barred by the statute of limitations. This includes all of the complainants except the heirs of Mary T. Shackleford. But the conveyance of their parents, however defective it may be as to their mother, certainly binds their father, who is tenant by the curtesy, and living. *Murdock* v. *Johnson*, 7 Coldw. 605 ; *McCorry* v. *King*, 2 Humph. 267. The deed estops the father and his children to the extent of the father's interest as tenant by curtesy, the false description of the interest of the wife as one-seventh not affecting this result. This estoppel did not exist in *Dodd* v. *Benthal*, 4 Heisk. 267. The suit is, therefore, premature on behalf of these heirs.

The bill must be dismissed with costs.