*163
 
 White, J.
 

 delivered the following opinion of the court.
 

 The record shows, that this is an action of Trespass, assault and battery and false imprisonment ; that the declaration is in the usual form ; that the defendants pleaded not guilty, and that the plaintiff agreed, that under that plea the
 
 *164
 
 defendants might give in evidence, any facts which would show they were justified ; that upon the trial it appeared in proof, that in the month of October 1309, the plaintiff descended the river Tennessee in a boat; that he landed his boat at the landing, near High-Wassee Garrison ; that while at said landing, he was arrested by the defendant Sevier, under an order of the defendant Purdy ; that he was taken to said Garrison, and there confined three days, by order of said Purdy, within which time a court Inquiry was held by said Purdy’s order, which court convicted said Plaintiff of having sold spirituous liquors to the soldiers, and to Indian countrymen ; that the plaintiff was then set at liberty
 
 ;
 
 that the defendants gave in evidence,that the landing was within the tract of country, reserved by the United States, in their treaty with the Cherokee Indians, for the purpose of a Garrison ; that Purdy was a Colonel, commanding at that Garrison ; that the plaintiff had applied to said Purdy for permission to sell goods to the soldiers, and obtained it; that Purdy had issued an order, prohibiting him from selling spirits to soldiers or Indian countrymen, that the plaintiff violated this order, for which violation the defendants commuted the acts complained of, &c. That the counsel of the defendants insisted, these facts amounted to a justification of their conduct, and applied to the circuit court so to instruct the jury, which the counsel tor the plaintiff objected to, and the court did instruct the jury, that if they behaved the facts, they did in law, amount to a justification ; to which opinion the plaintiff’s counsel filed a bill of exceptions; the jury found the defendants not guilty, and from the judgment rendered upon that verdict, the writ of error was taken, and the cause removed into this court. Errors had been assigned, and
 
 in nullo est erratum
 
 pleaded. The error relied upon is, that the opinion of the circuit court was incorrect.
 

 The defendants counsel have argued, that this is in the nature of an application for a new trial, which cannot be moved for in this court , but ought to have been applied for in the circuit ; and that until the application was made to and refused, by that court, the plaintiff cannot complain here. It seems to us, that if the circuit court, upon the trial of a cause, states the law erroneously to the jury, upon a point material, and that in consequence of such erroneous charge, the party has, in all probability, been injured, he may except to such opinion, and have it reversed in this court, and that
 
 *165
 
 this is not viewed in the light of an application for a new trial, which is always rested upon matters
 
 dehors
 
 the record, and is made to the sound discretion of the court under all the circumstances of the case. But it is peculiarly the province of this court to reverse the decisions of the circuit, on questions of law that were material ; and that we have nothing to do in reviewing the verdicts of juries founded upon matters of fact. It may so happen, if this judgment is reversed, that the cause must be retried ; and exactly the same consequence might follow from reversing a judgment because improper evidence had been received yet the counsel have admitted, and correctly too, that in such case this court could reverse, 4th Cranch
 
 72,
 
 and 2d Cranch 239, seems to sanction the course which we believe to be correct, in this case.
 

 Many cases have been read, by the counsel far the defendants, designed to prove that the circuit court ought not to have granted a new trial, if applied to, although satisfied that they had misdirected the jury. Entertaining the opinion that we do, that the party who thinks himself agrieved, had a right to except to the charge delivered, & that we are bound to review that point, it will be readily perceived that all these authorities are beside the question, and that it will be useless to notice them. The counsel who last argued for the defendants, insisted with earnestness and considerable ingenuity, that the point decided by the circuit judge, was proved to be immaterial by the finding of the jury " that the defendants are not guilty,” and saying nothing as to the justification. There would have been great strength in this argument it justification had been pleaded, as well as not guilty. But when we recur to the record, and find that the question which alone the jury were sworn to try, was guilty or not guilty
 
 ;
 
 and see further that there was no contest, except as to the justification, the benefit of which the party was entitled to, under the plea, not guilty, the argument loses its whole force.
 

 This conducts us to the merits of the case. Were the defendants justified ? is the question. The circuit court decided they were ; and the counsel for the defendants have argued, that this decision is correct. First, because the plaintiff sold whiskey to Indians and Indian countrymen, which laid him liable to the penalty of the trade and intercourse law, and authorised the military to arrange and con
 
 *166
 
 fine him for five days ; and to prove this we have been referred to the acts of Congress 1802, page 40, sections 3, 4, 9, 16.
 

 It seems very clear that the penalty imposed by that act is only incurred, when a person, without a permit, goes into the country, the possession and
 
 enjoyment
 
 of which, is secured to the Indians, and there trades with them. But the possession and enjoyment of the tract where this triffick was carried on, is secured to the
 
 United States,
 
 and of course this penalty is no more incurred, than if the trading had been in this place, No justification can then be derived from this source.
 

 Again, it is insisted, that as this transaction happened in the military reservation, and near the Garrison, the defendants are justified under the military law. This is a question of some novelty and delicacy ; but perhaps of not very much difficulty.
 

 On the one hand, we wish not to establish a principle that will subject a citizen, as such, to martial law
 
 ;
 
 and on the other should be sorry to restrain an officer, from the exercise of powers essential to the very existence of a useful army. Without disciplined subordination, it has been well said, an army is harmless to the enemy, and dangerous to its own country.
 

 It has been argued,
 
 for
 
 the defendants, that the plaintiff,
 
 by
 
 asking permission to vend goods, placed himself in such a situation, that he was bound to obey the orders of the commandant, while he was on the garrison tract ; that the officer is bound to see that good order is kept, which he cannot do, without a power over all those who come upon the military reservation. It seems to us that every citizen who is permitted to enter a garrison, or a tract of country possessed by the soldiery, ought, while there, to conduct himself orderly, and according to the reasonable rules prescribed for him ; but if he does not choose to do so, what power has the officers over him ? To put him into the guard house
 
 ?
 
 No
 
 ;
 
 tell him to go away ; it he does not obey, use as much force as is necessary to put him away ; and when he is out of the line of centinels, he can neither get back to do mischief, nor can the soldiers get to him, if the centinels do their duty. This is a very natural course, and we think will answer every reasonable purpose. We do not understand
 
 *167
 
 that the soldiers can at will depart from the garrison ; they are within the line of centinels, and the citizens without, and all is well. If soldiers came out of their garrison, buy whiskey and get drunk, is the citizen to be taken up and subjected to such punishment as the military choose ? Such a power is too extravagant to be claimed. Suppose they have a right to imprison ; how long is it to continue
 
 ?
 
 there are no limits to the plea of necessity for the sake of
 
 order ;
 
 it might be continued for a month, a year, or a lifetime ; there are no bounds except the direction of the officer, Citizens hold their liberties upon no such tenure.
 

 Counsel say the permission applied for and obtained, took from the plaintiff the character of citizen, and attached him to the army. In what capacity ? He is no officer
 
 ;
 
 no soldier
 
 ;
 
 what will you call him ? The gentlemen say he is either a military store keeper, a sutler or retainer to the camp. We feel satisfied there is no pretence for calling him a military store keeper ; the articles of war contemplate that sutlers sell spirits; as he was prohibited from selling spirits, he cannot be a sutler within the meaning of those articles. A retainer, we are told, is a dependent, or hanger on. It is strange, that we can get no definite idea, attached to the term
 
 retainer to the
 
 camp.
 

 It would seem, that a retainer to the camp, must be a person, who from his situation, and the nature of his employment, has a right to be at the camp, & within the line of centinels,as well as the soldiers, and whenever a person is in any capacity attached to the camp, and from the nature of employment is to be within the chain of centinals, then he is a retainer, unless he sustains some other definite character pointed out in the articles of war ; no matter whether he be a bakery a cook, a person to wash, or any thing else you please. The best boundary that we can fix, between citizens and soldiers, is the chain of centinels ; and he who has a right, from the nature of his employment, to be within them, is subject to the rules and articles of war ; and he who is a citizen without, is a citizen, not subject to them
 
 ;
 
 but is to have his conduct judged of by the general laws of the country.
 

 How is it in this case ? Had Luty a right to be in the camp, within the lines
 
 ? No
 
 pretence for it, from this record. But suppose him a sutler,or retainer, and subject
 
 *168
 
 to the articles of war ; would those articles justify this proceeding ? We incline to think not. Let the officer dismiss him, and deny any entrance to the camp ; this, it seems to us, would have heen the punishment. We feel convinced the circuit court erred in considering the defendants justified ; that the facts disclosed do not form a justification, whatever effect they may have, to leseen the damages that are to he recovered,
 

 Our opinion is that the judgment ought to be reversed.