JOHN J. McEWEN *v.* THOMAS COAL & LAND
COMPANY *et al.*

(*Nashville.*    December Term, 1911.)

1. **LAND LAWS.  Checkerboard system of entries is valid; each
   entry joins another in the system, and specialty of each de-
   pends upon specialty of initial entry, when.**

   The checkerboard system of entries is valid; and if the system
   is properly located, so that the various entries join each other
   by proper description, the entry remotest from the initial en-
   try of the system, by tracing back through the intermediate
   entries, incorporates upon its face, as a  matter of law, the
   locative calls contained in the initial entry, and each entry of the
   system is special where the initial entry is special. (*Post,*
   *p.* 702.)

   Cases cited and approved:  Bleidorn v. Pilot Mountain C. & M.
   Co., 89 Tenn., 186; Coal Co. v. Scott, 121 Tenn., 88.

2. **SAME.  Same.  Initial entry must be special to render the
   others special when containing no locative call except to
   adjoin others of the system.**

   In a checkerboard system of entries, where each of the final and
   intermediate entries contains no locative call, except a call to
   adjoin others of the system, the initial entry must be special,
   in order to render the subsequent entries special. (*Post, pp.*
   702, 703.)

3. **SAME.  Special entry is defined.**
   An entry of public state lands, to be special, must contain a ref-
   erence to some thing or natural mark from which, either sin-
   gly or together, the land can be ascertained with reasonable
   industry to those acquainted in its neighborhood. (*Post, p.*
   703.)

McEwen v. Coal & Land Co.

4. SAME. Special entry must be such upon its face, and cannot be made such by extrinsic proof.

A special entry must be special in its description; and, if it is defective in this respect, it cannot be aided by extrinsic proof. (*Post, p.* 703.)

Cases cited and approved: Barnet v. Russel, 2 Tenn., 20; Barnes v. Sellars, 2 Sneed, 33; Berry v. Wagner, 5 Lea, 564.

5. SAME. Call "meandering said bluff eastwardly, crossing Little Laurel," does not make the entry special.

The call in an entry "meandering said bluff eastwardly, crossing Little Laurel," is not such as to make the entry special; for it does not show that the line crosses Little Laurel where it pours over the bluff, and cannot refer to any particular point or spot of land; nor can it be gathered from such call alone that the creek in fact flows over the bluff. (*Post, pp.* 703-705.)

6. SAME. Any presumption that preceding entry called for is special will not be indulged in, where proof shows it not to be special.

Where an entry calls for a certain corner of a preceding entry as its beginning point, any presumption that the preceding entry is a well-known tract of land, with the result of making the entry containing such call special, can no longer be indulged in, where it is shown in proof that all the entries were part of a checkerboard system, and that the initial entry was not special. (*Post, pp.* 705, 706.)

Case cited, distinguished, and approved: Coal Co. v. Scott, 121 Tenn., 88.

Cases cited: Barnet v. Russel, 2 Ov., 10; Simms v. Dickson, Cooke, 137; Kendrick v. Dallum, Cooke, 220; Graham v. Dudley, Cooke, 353; Talbot v. McGavock, 1 Yerg., 262; Berry v. Wagner, 5 Lea, 364.

7. SAME. Entry containing no locative call cannot be made special by survey.

An entry, containing no locative call that will make it special, cannot be made special by a survey. (*Poost, pp.* 706–710.)

McEwen v. Coal & Land Co.

Cases cited and approved: Reid v. Dodson, 1 Tenn., 408; Reid v. Buford, 1 Tenn., 415 Smith v. Buchannon, 2 Tenn., 305; White v. Crocket, 3 Hay., 183; Winchester v. Gleaves, 3 Hay., 213; Trousdale v. Campbell, 5 Hay., 101; Terrell v. Murray, 2 Yerg., 384; Trousdale v. Campbell, 3 Yerg., 160; Donegan v. Taylor, 6 Humph., 501.

Cases cited, distinguished, and approved: Davidson v. Shelton, 1 Overt., 74; Davidson v. Shelton, 2 Overt., 2; White v. Crocket, 3 Hay., 185; Talbot v. McGavock, 1 Yerg., 271; Brummett v. Scott, 4 Heisk., 325; Berry v. Wagner, 5 Lea, 564; Henegar v. Matthews, 88 Tenn., 133.

8. **SAME. Elder grant cannot be defeated by younger grant, except where it was based upon an older special entry.**

The State's older grant cannot be defeated by its younger grant of the same land, in whole or in part, upon extrinsic evidence, except by showing an older special entry upon which the younger grant was based. (*Post, pp.* 710-712.)

Acts cited and construed: Acts 1784, 1786, 1789, and 1806, ch. 1, secs. 7 and 10, for removal of land warrants.

Cases cited and approved: Sevier v. Hill, 2 Tenn., 23; Polk v. Hill, 2 Tenn., 163; Anderson v. Cannon, Cooke, 27; Donegan v. Taylor, 6 Humph., 501; Thomas v. Tankersley, 5 Cold., 165.

9. **SAME. State's earlier grant based on later entry prevails over its later grant not based on an earlier special entry, though the latest enterer knew what land was intended to be located by the earlier entry.**

The State's earlier grant on the later of the two entries will prevail over a later grant on the earlier entry of the same land, where the earlier entry was not special, though the second enterer was chargeable with personal knowledge of what land was intended to be covered and located by the earlier entry, by reason of the fact that the same person acted as agent for the respective enterers in locating both entries; for personal notice is not such as the law prescribes, and the secret and un-

McEwen v. Coal & Land Co.

expressed intention of the locator, or enterer, cannot indicate to subsequent locators, or enterers, the land meant to be appropriated, so as to affect their conscience with unfairness, should they attempt to appropriate the same land which the other contemplated. (*Post, pp.* 712-718.)

Cases cited and approved:  Reid v. Dodson, 1 Tenn., 408; Reid v. Buford, 1 Tenn., 418; Winchester. v. Gleaves, 3 Hay., 213; Craig v. Polk, 3 Yerg., 249.

Case cited and overruled: Coal Co. v. Scott, 121 Tenn., 88.

<hr>

FROM GRUNDY.

<hr>

Appeal from the Chancery Court of Grundy County.— T. M. McConnell, Chancellor.

' Chas. C. Moore and L. V. Woodlee, for complainant.

Pearson & Bennett and Smith & Carswell, for defendants.

<hr>

Mr. Justice Lansden delivered the opinion of the Court.

This is an action of ejectment, involving four separate tracts of land.  The complainant has the oldest entry and the youngest grant.  The defendants introduce the oldest grants, to which they claim title.  The complainant claims title to grant No. 7890, based upon.

entry No. 4219, grant No. 7879, based upon entry No. 4265; grant No. 7892, based upon entry No. 4271, and grant No. 7891, based upon entry No. 4295, all issued by the State of Tennessee to Joseph H. McEwen. The complainant has established a proper deraignment of title to each of the foregoing grants. The grants relied upon by the defendants, and to which they have deraigned title, are Nos. 5987, 5993, 5986, 5090, 5099, and 5159, all issued to Samuel R. Barrel prior to the date of the grant under which complainant claims. The defendants have also introduced grants Nos. 5514, 5520, 6833, 6836, and 6837, issued to Francis A. Dickens, and grants Nos. 5237, 5311, and 5396, issued to Stephen Haight, for the purpose of showing the title outstanding against comlainant. The entries upon which the complainant's grants are based are part of a checkerboard system of entries and grants. The initial entry of the system is as follows:

"No. 4042. Peter Yates enters 5,000 acres of land in Warren county, Tennessee, on Cumberland Mountain, on the headwaters of Collins river. Beginning on a black oak standing on the bluff of the right-hand fork of Collins river; thence meandering said bluff eastwardly, crossing Little Laurel; thence northwardly; thence westwardly; thence southwardly to the beginning, plotting out all prior claims.

"October 10, 1835.

"PETER YATES, Locator."

This entry was surveyed October 19, 1836, but no grant ever issued upon it. The survey was in neither an oblong

nor a square to the cardinal points of the compass, but ran with the meanders of the "left bluff of the left-hand fork of Collins river" 120 poles, thence due east 180 poles, and thence northeast 434 poles to a hickory forming the southeast corner of the entry. Upon this last leg of the description, Little Laurel was crossed, but not at a point where it flows over the bluff of Collins river. Exhibit No. 1 to the deposition of M. E. Deakins is a map showing the location of the lands in controversy, and estimating upon this map, in connection with the original survey, the Little Laurel does not flow over the bluff of Collins river for about 400 poles south of the southern line of entry No. 4042 as originally surveyed.

The next entry in the checkerboard system necessary to be noticed is entry No. 4216 in the name of Elias Mayo as follows:

"Entry No. 4216. Elias Mayo enters 5,000 acres of land in Warren county on the waters of Collins river, to begin near the southwest corner of a 5,000-acre tract of land entered in the name af Peter Yates, bearing date 10th of October, 1835, and to run south and east, counting out all older claims until the quantity is made.

"May 16, 1836.

"JOHN STUMP, Locator."

This entry was never surveyed, but was re-entered under No. 4267 and surveyed September 6, 1836. The next entry on the checkerboard is entry No. 4217 and is as follows:

"Entry No. 4217. Jesse J. Everitt enters 5,000 acres of land in Warren county on the waters of Collins river,

beginning at the west corner of an entry made in the office this day in the name of Elias Mayo and to run south and east, counting out all older claims.

"May 16, 1836.

"JOHN STUMP, Locator."

This entry was surveyed September 6, 1836. The next entry is No. 4219, as follows:

"Entry No. 4219. Samuel Edmonson enters 5,000 acres of land in Warren county on the waters of Collins river, to begin on the southeast corner of a tract of land this day entered in the name of Jesse J. Everitt of 5,000 acres of land, and to run east and south, counting out all older claims.

"May 16, 1836.

"JOHN STUMP, Locator."

The next entry is No. 4265, surveyed August 31, 1836, and is as follows:

"Entry No. 4265. Joseph McEwen enters 5,000 acres in Warren county, Tennessee, on the headwaters of Collins river, to begin at the southwest corner of a tract of land entered in this office in the name of Samuel Edmonson, and to run south and east, counting out older and legal claims until the quantity is made.

"August 20, 1836.

"JOSEPH McEWEN, Locator."

The next entry is No. 4271, surveyed September 6, 1836, and is as follows:

"Entry No. 4271. Church Lanier enters 5,000 acres of land in Warren county, Tennessee, on the headwaters of Collins river, beginning at the southwest corner of a

5,000-acre survey in the name of Samuel Edmonson, to run west and south for complements, counting out all older claims until the quantity is made.

"September 5, 1836.

"JOSEPH McEWEN, Locator."

The next entry is No. 4269, surveyed September 6, 1836, and is as follows:

"Entry No. 4269. Greenwood Payne enters 5,000 acres of land in Warren county, Tennessee, on the waters of Collins river, beginning at a double white oak, the northwest corner of George Cagle's 5,000-acre survey, running north and east, counting out all older claims until the quantity is made.

"JOSEPH McEWEN, Locator."

Entry No. 4268, surveyed September 6, 1836, is as follows:

"Entry No. 4268. George Cagle enters 5,000 acres of land in Warren county, Tennessee, on the waters of Collins river, beginning at a black gum, the southwest corner of Church Lanier 5,000-acre tract, and running west and north, excluding all prior claims.

"September 1, 1838.

"JOSEPH McEWEN, Locator."

The propositions relied upon by complainant's counsel to establish the specialty of the older entries so as to enable the younger grants to overreach the older grants shown in evidence are: (1) That they form a part of a checkerboard system of entries running back to an initial special entry; (2) that each calls to begin upon a corner of a well-known tract of land; (3) that the four

entries upon which the complainant's grants are based were located by the same person who located the entries upon which the Barrell grants are based, and that this locator, in making the entries for the Barrell grants, had knowledge of the location of the previous entries he had made for the McEwen grants, and, as he was the agent of Barrell in this matter, his knowledge would be imputed by the law to Barrell and all subsequent grantees in the Barrell chain of title, thereby making the McEwen entries special as to them.

1. What is commonly known as a checkerboard system of entries has been held valid by this court, so that the entry most remote from the initial entry of the system is said, by referring to the intermediate entries, to incorporate upon its face, as a matter of law, the locative call contained in the initial entry; and if the system is properly located, so that the various entries join each other as the entries direct under the law, each entry of the system is special. *Coal Company* v. *Scott,* 121 Tenn., 88, 114 S. W., 930; *Blcidorn* v. *Pilot Mountain C. & M. Company,* 89 Tenn., 186, 15 S. W., 737.

If the only locative call of the intermediate and final entries in the checkerboard is a reference to some other entry of the system, each must finally depend upon the initial entry for specialty. It is manifest that the validity of such a checkerboard system must depend upon the specialty of the initial entry. Entries in the checkerboard, other than the initial one, which contain no locative call, except a call to adjoin others of the system, are mere geometrical points and lines, and exist

only in thought. In their very nature, their location will depend upon the location of the initial entry, and, if it is vague, and therefore void, all of the entries of the system depending upon it are likewise void.

It therefore becomes necessary to determine whether the initial entry of this system in the name of Peter Yates is a special one. An entry, to be special, must in some part of it contain a reference to some thing or natural mark from which, either singly or together, the land can be ascertained with reasonable industry by those acquainted in its neighborhood. It must be special in its description, and, if it is defective in this respect, it cannot be aided by extrinsic proof. *Barnet* v. *Russel,* 2 Tenn., 20; *Barnes* v. *Sellars,* 2 Sneed, 33; *Berry* v. *Wagner,* 5 Lea, 564.

The call in the entry under consideration which, it is claimed, points out the locality intended to be appropriated by it is "meandering said bluff eastwardly crossing Little Laurel." It is argued that this call shows that the entry should cross Little Laurel where it pours over the bluff of the right-hand fork of Collins river, and it would therefore include a particular point of the Little Laurel and thus locate the land. This conclusion, however, is predicated upon a false premise. The entry does not say that the survey should cross Little Laurel where it pours over the bluff of the west fork of Collins river. Little Laurel is a stream some six or seven miles long flowing through the Yates entry in a southerly direction, and pours over a bluff some 400 poles south of the southern boundary line of the entry according to the

survey claimed by complainant. It is thus shown that
the official surveyor did not understand the entry to have
the meaning now ascribed to it. The survey of the other
entries in the system, as shown by the map, Exhibit 1,
supra, likewise shows that no one claiming an interest in
this checkerboard system understood that the Yates
entry was to cross Little Laurel upon its south line where
it pours over the bluff. So, if this entry be treated as
sufficiently special to admit of extrinsic evidence of the
location of the objects called for, it is seen that the call
for Little Laurel cannot refer to any particular point
or spot of land. This call of the entry does not direct
that Little Laurel be crossed where it flows over the
bluff, nor, indeed, can it be gathered from it alone that
the creek in fact flows over the bluff. We are therefore
of opinion that the Yates entry is not special. From
what has been said heretofore, it must follow that the
subsequent entries of the system, having no call for
location other than such as must finally depend upon
the Yates entry for specialty, must fall with it.

2. (a) The second insistence of complainant is that
each of the foregoing entries calls to begin upon a corner
of a well-known tract of land, and for that reason they
are special. It is first said that the court will presume
that the preceding entry called for in each one of the
system was a well-known tract of land at the date of
the entry; and, second, if that is not sound, the Everitt
entry was surveyed before the issuance of the older
grants, and it became possessed of the necessary element
of notoriety by virtue of the survey. Hence, it is said,

the Edmonson entry is special, because it calls for the Everitt, and the other three entries in controversy, calling for the Edmonson and the Everitt, are also special. In support of this contention, we are cited to *Talbot* v. *McGavock,* 1 Yerg., 262; *Simms* v. *Dickson,* Cooke, 137, Fed. Cas., No. 12869; *Barnet* v. *Russel,* 2 Overt., 10; *Kendrick* v. *Dallum,* Cooke, 220; *Graham* ·v. *Dudley,* Cooke, 353, Fed. Cas , No. 5665; *Berry* v. *Wagner,* 5.Lea, 564; *Coal Co.* v. *Scott,* 121 Tenn., 88, 114 S. W., 930.

The well-known tract of land referred to in the Edmondson entry is the Everitt entry, which refers to the Elias Mayo, which in turn refers to the Peter Yates. All of these entries, except the Yates, were made on the same day, and each refers back to the objects called for in the Yates for location. Having determined that the Yates entry is void for vagueness, it conclusively follows that there is no means of locating either of the entries dependent upon it, and it is thus impossible for either entry to have called to begin upon a well-known tract of land upon the day of its date.

There is no basis for the indulgence of a presumption establishing the notoriety of the entries involved in this case. The entries themselves are in proof, and the objects relied upon to establish their specialty are shown in the evidence. When it is shown that the initial entry is not special, this proves as a matter of substantive evidence that no one of the series is, or could be, well known in the neighborhood by virtue only of the call to adjoin each other. The indefiniteness of all the entries

in the checkerboard is affirmatively established, and, if it be conceded that, in the absence of proof, the law would presume the entry called for notorious in the neighborhood, this presumption is rebutted and overcome.

The same was true of the facts of *Coal Company* v. *Scott,* supra, in so far as a presumption of law was indulged in favor of the notoriety of the entry there discussed. That entry was one of a checkerboard system, the initial entry of which was special upon its face, and the entire checkerboard was properly surveyed upon the ground. The entries were introduced in evidence and are copied in the opinion of the court, and they establish as a matter of affirmative proof that the southeast corner of entry No. 775 was either well known, or could have been ascertained by reasonable industry upon the part of any one acquainted in the neighborhood. Therefore there was no occasion to indulge a presumption of law in favor of the notoriety of this corner, and what was said upon that point was obiter.

(b) The definition of a special entry given in all of our cases, the substance of which has been stated hereinbefore, excludes the idea that an entry can acquire specialty by virtue of a survey. One of the chief objects of the law in requiring an entry to be special is to enable the surveyor to properly survey it out. The other, and the only other, object of specialty in entries is to notify subsequent enterers of the locality appropriated by the first entry. It would be an anomaly to say that the entry must be sufficiently special to enable the surveyor to survey it out, and at the same time to say that, not-

withstanding the entry is so vague that the surveyor cannot properly locate it, yet if he disregard his duty, and assume to lay it down upon a particular spot in violation of the law, his unauthorized and illegal act imparts validity to the entry which was otherwise void. The object or thing relied upon for specialty must be designated upon the face of the entry. If it were not so, the surveyor could not get his directions for surveying the entry from the entry. Subsequent enterers must be notified of the location of the first entry by the objects called for in it. The survey, standing alone, does not show that the entry calls for a well-known tract of land; nor can it impart notice, in law or in fact, of the location of the entry. If this were not true, there could be no such thing as a vague entry after survey, and titles would originate, not with the entry, or grant, in case the entry is not special, but with the survey.

In *Reid* v. *Dodson,* 1 Tenn., 408, Judge Overton uses this language:

"It is left for the court to collect the general view the legislature had in requiring an entry. Now, it seems to me that the intention of the legislature was to apprise the surveyor and others where the land lay, so as to enable the surveyor to survey and others to make entries. All the acts of the legislature respecting the appropriation of vacant lands contemplate the idea that, as the surveyor was directed to survey the oldest entry first, the governor would issue a grant upon the first survey before a younger one. . . . The idea of the law is that the surveyor shall survey all entries, without

calling on the enterers to show their claims. . . . It thence results that the entry shall be special to enable the surveyor to know where to survey it; and, if others have or wish to make entries, it ought to have such reasonable specialty as would enable them to steer clear of it; and to call on the surveyor to run it out first, so as to be able to avoid it. If it has not these specialties, it is as no entry at all, and no subsequent enterer ought in equity to be affected by it."

In the same case Judge Humphreys, concurring with Judge Overton, speaking to the same point, said:

"Whether an entry be special or not must depend upon the entry itself, and cannot be made better or worse by parol proof of what the enterer intended. It is a matter of law, and not of evidence. The ground of all proof respecting the calls of an entry must be laid in the entry. The entry must show the place called for, and parol or other proof will be received to show that the place in its situation, name, etc., agrees with the calls of the entry; but, where an entry is vague and uncertain, proof cannot make it good."

The same doctrine was announced in *Reid* v. *Buford*, 1 Tenn., 415, and *Winchester* v. *Gleaves*, 3 Hayw., 213.

The first enterer acquires his equitable title by virtue of his entry. A vague entry is void, and is as if no entry had been made. A grant can relate only to an equitable title conferred upon the enterer by virtue of a special entry. The entry is as much a record as the grant, and, when special, is the first link in the paper title. But, as stated, a vague entry is void, and it is perfectly mani-

fest that the mere act of the surveyor in making an unauthorized survey of a void entry cannot make a valid contract between the enterer and the State out of that which the law has declared of no effect.

There is nothing in *White* v. *Crocket*, 3 Hayw., 185; *Davidson* v. *Shelton*, 1 Overt., 74 (also reported in 2 Overt., 2) ; *Talbot* v. *McGavock*, 1 Yerg., 271; *Brummett* v. *Scott*, 4 Heisk., 325; *Berry* v. *Wagner*, 5 Lea, 564, and *Henegar* v. *Matthews*, 88 Tenn., 133, 14 S. W., 554, contrary to the view expressed in the cases last cited above and herein.   All of them, which bear upon the subject, are in entire accord.   *Winchester* v. *Gleaves* and *Henegar* v. *Matthews* belong to another class of authority, and do not support the proposition that the survey of a vague entry before the issuance of the first grant renders the state's first grant void.   The surveys and plats referred to in those cases are not the surveys of the county surveyor relied upon by complainant in this case. *Henegar* v. *Matthews* involved land in the Hiwassee district which had been sectionized by the act of 1819, requiring that a base line be laid down connecting two designated points.   This was a survey directed by public law, intended to serve the purposes of the public, and was properly held to be such a record and such a public act that a call in an entry connecting with this base line was sufficient to make the entry *prima facie* special. To the same effect is *Winchester* v. *Gleaves*.   But that an elder survey of the elder entry establishes priority in favor of the younger grant has never been held. *White* v. *Crocket*, 3 Hayw., 183; *Trousdale* v. *Campbell*, 5

Hayw., 101; *Terrell* v. *Murray,* 2 Yerg., 384; *Trousdale*
v. *Campbell,* 3 Yerg., 160; *Donegan* v. *Taylor,* 6 Humph..
501.

In many of the cases, the survey is referred to as a sur-
vey of the entry; but as a matter of law and of constant
practice the survey was for the grant. It was never
intended that the survey could affect the *status* of the
entry in any degree. It need not be surveyed at all.
*Smith* v. *Buchannon,* 2 Tenn., 305. But usually the de-
scription employed in the entry was general, calling for
well-known objects, natural and artificial, so as to desig-
nate the locality intended to be appropriated without
specific reference to its boundaries. And in such case,
before the grant could issue, it was necessary that the
general locality indicated by the entry should be specific-
ally described, so as to definitely fix the boundaries of
the grant. But the first grant cannot be defeated by
extrinsic testimony, except by showing that the younger
grant was based upon an older special entry. *Sevier* v.
*Hill,* 2 Tenn., 23; *Polk* v. *Hill,* 2 Tenn., 163, note.

By the acts of 1784, 1786, and 1789, the legislature
of North Carolina provided that the second enterer might
have his warrant removed from the tract first entered
and have it surveyed upon any vacant land he might
be able to find and obtain a grant for the land surveyed.
Nothing was said in these statutes about entering the
land to which the warrant had been removed, and no
provision was made for a second entry, except, perhaps,
as related to military warrants. But by Acts 1806, ch.
1, secs. 7, 10, removed warrants were placed on the same

footing as other warrants. *White* v. *Crocket,* 3 Hayw., 183. In actual practice under those statutes, it happened that second enterers would remove their warrants to the same tracts of land, and the question soon arose as to the relation between the grant and the first survey. It was determined in *Anderson* v. *Cannon,* Cooke, 27, in 1811, and the question decided there has been regarded as finally settled. The court said:

"Suppose two individuals to have removed warrants, and each in search of land out of which to have them satisfied. C. owns one warrant, and D. the other. C.'s is surveyed on the 1st day of June, 1794, D.'s on the 1st day of July following. D. obtains his grant the 1st day of October in the same year, and C. obtains his the 15th day of the same month. Both these surveys and grants are for the same piece of land. . A contest arises between them, and how have the courts determined? Uniformly in favor of D., the first grantee. Why? Because the survey is not made a matter of record, and the reasons which would favor a first entry do not extend in favor of the first survey. In the case of grants on removed warrants, the first grantee has been considered by the laws of North Carolina as having the title. Still I admit some judges have even doubted this. In the case of Shelby and Shannon, on a motion for a new trial, one judge of the late superior court went upon the ground of priority of survey in giving his opinion. Afterwards, upon the second trial, when former determinations upon that point were brought to view, he changed his opinion." *Thomas* v. *Tankersly,* 5 Cold., 165.

In *Donegan* v. *Taylor,* 6 Humph., 501, the direct question here involved was presented for determination, and Judge Reese, speaking for the court, said:

"The grant of neither party was founded directly on an entry, but in each case upon surveys made by virtue of removed warrants. The survey of the younger grant was first made, and it is urged that the grant and survey relate to each other and constitute one title only. If this be not so, the lessor of the plaintiff was entitled to succeed in the trial below, by operation of his elder grant. The only relation established in North Carolina and Tennessee between a grant and any initiatory act of appropriation, which has been held to overreach the elder grant and confer better title, is the relation between the younger grant and the elder legal entry. Such effect, from the beginning of our land system to the present moment, has never in any case been conceded by our courts to the elder survey. No such case can be found in all the volumes of Overton, Cooke, Haywood, and Peck, during which period our courts were filled with investigation of land titles in every part of the State, and during which our peculiar land system was matured and authoritatively settled. On the contrary, it has been expressly held that the relation contended for between the grant and survey, and the effect claimed for it, do not exist."

3. It appears from the record that a large number of grants of 5,000 acres each were issued to Samuel B. Barrell after the date of the McEwen checkerboard system and that these grants were procured substantially

in this way:  Felix Grundy and John and F. H. Stump entered into a series of contracts by which the Stumps undertook to locate, enter, and procure grants of land for the consideration of one cent per acre, together with an interest in the proceeds of the lands when sold. Samuel B. Barrell, of Boston, was also interested, through Grundy, in the sale of the lands that the Stumps might locate, and to facilitate the sale it was agreed that the grants should issue in the name of Barrell.  All of the lands claimed by the complainants in this case are covered by grants to Barrell which are older in date than the grants to McEwen, but, as heretofore stated, are based upon younger entries.  The Everitt entry, No. 4217, was located by John Stump, and grant No. 5194, based thereon, issued to Samuel B. Barrell.  Stump also located the Edmondson entry, which calls for the Everitt entry.  All of the other entries involved in this litigation call for the Edmondson, either directly, or through each other, so that the location of the Everitt entry will not only locate the Edmondson, but the remaining three entries involved herein.  It is said by complainant that the Edmondson entry, No. 4265, must be special in so far as defendants are concerned, because Stump was the agent of Barrell, and located the Everitt entry, and also as the agent of McEwen located the Edmondson entry.  Therefore Barrell, and all those claiming under him, must have had notice of the location of the Edmondson entry, because of the knowledge of his agent, Stump, who located both it and the Everitt entry.  In support of this contention counsel cite *Coal Co.* v. *Scott,* supra.

In that case J. A. Layne located the Dibrell entry, 783, and also the Hatfield entry, No. 2315, and the court held that, Layne being the agent of Hatfield, his knowledge would be the knowledge of Hatfield, and that Hatfield could not complain, nor those claiming under him, that he had no knowledge of No. 783. So it is concluded that Stump, having located both the Everitt and Edmondson entries, as agent of Barrell, could not be heard to say that he did not know of the location of the Edmondson entry when he procured grants to issue including the lands appropriated by it.

The defendants reply to this that the Everitt entry was not properly surveyed, and that Stump could not be charged with knowledge that the surveyor would mislocate the Everitt entry, and therefore, when Barrell procured his grants to issue, he did so upon the assumption that the checkerboard system of McEwen would be surveyed in conformity to its calls. However, this does not meet the issue. The Everitt entry was not only located by Stump, the agent of Barrell, but the land embraced within it was granted to Barrell by grant No. 5194. All of the entries and grants claimed by the complainants depend for location upon the Everitt; and, if the case of *Coal Co.* v. *Scott,* supra, is to be adhered to, the defendants cannot dispute the existence and location of the entries of complainant dependent upon the Everitt entry, because Stump, the agent of Barrell, must have known of the attempted location of the Everitt entry before the issuance of grant No. 5194 thereon. The contract between Stump and Grundy required

Stump, not only to make the locations and see that the entries were properly made, but also to procure the issuance of grants in the name of Barrell.

It cannot be said that the vesting of a legal title will be arrested because the one about to receive it may have personal knowledge of facts which do not appear in the written evidence of the title. Personal knowledge of a subsequent enterer of facts which do not appear in the face of the first entry cannot determine the specialty of such entry.

This is not a new question in this State. In *Reid* v. *Dodson,* supra, Dodson's entry was located by Gen. James Robertson as the agent of Mabane. Reid's entry was dated December 20, 1783, and was: "Capt. Jesse Reid, transferred to Guilford Dudley Reid, enters 3840 acres of land lying on Little Harpeth, beginning above Absalom Tatum's line and up said river on both sides." Dodson had the oldest grant founded upon the youngest entry. It was in proof that Gen. James Robertson, who located the youngest entry so as to interfere with Reid's entry, knew where Tatum's claim lay. This knowledge upon the part of Robertson, who acted as the agent of Mabane in making the location of the younger entry, was urged upon the court as sufficient to supply any lack of notoriety found in the calls of the first entry. Dickinson & Grundy presented the question for the plaintiff, and Beck, Campbell, Haywood & White represented the defendant. Speaking to this point, Judge Overton said:

"But it is urged that, if the entry should be esteemed insufficient, the same end is obtained by the notice which the defendants' locator had. I entirely agree with the argument of defendants' counsel in this respect that the courts of law have gone far enough in permitting an entry to impeach a grant. I might say, too far; but the law is considered otherwise. The act has prescribed what this notice shall be, an entry, and we are not authorized to admit a substitute. In equity in some cases, and on caveats, it is done, but even then with great care. The last entry of the defendant supersedes the first; and it must therefore be thrown out of the case."

Judge Campbell said upon the same point:

"The entry should be special on the face of it, and did not seem to him that this entry was so; if the entry is not special, the oldest grant must prevail."

Judge Humphrey said:

"Proof of notice, except from the face of the entry, cannot be received, in a court of law. The entry, being a matter of record, can only be resorted to on the ground of notice."

The same point was raised in *Reid* v. *Buford,* 1 Tenn., 418, and the judges determined it the same way. A strong case upon this point is *Winchester* v. *Gleaves,* supra. Winchester's entry called to begin at James Robertson's southwest corner on the section line. Winchester's entry was placed on the general plan of the township, and shown upon the plat as beginning at Record's southwest corner in the section line. The general plan showed precisely the spot claimed by Win-

chester which his entry covered; but, as stated, his entry called for James Robertson's southwest corner, whereas it was plotted on the map as beginning on Record's southwest corner, which was the correct location. Gleaves and his locator both knew of the mistake in Winchester's entry in calling for Robertson's corner, instead of Record's and they admitted in their testimony that it was because of this mistake that Gleaves made his entry upon the same place. It was urged upon the court that parol evidence of the knowledge of Gleaves of the survey of Winchester's entry as shown by the general plan should be admitted for the purpose of establishing actual knowledge upon his part of the correct location of Winchester's entry. The court said:

"Thirdly, as to extrinsic testimony to add to or alter an entry, this court is clearly of opinion that no such testimony ought to be received. The secret and unexpressed intention of the locator cannot indicate to subsequent locators the land meant to be appropriated, so as to affect their conscience with unfairness, should they attempt to appropriate the same lands which the other contemplated.

"Fourthly, personal notice is not such as the law prescribes. It has directed an entry for that purpose, which is the same thing, in effect, as to say, You shall give a notice in writing. It would introduce the danger to be apprehended from parol proof of notiec, and defeat the main purpose of the legislature, if the latter were to be received as sufficient."

To the same effect is *Craig* v. *Polk,* 3 Yerg., 249.

The land system of this State is very complicated and very artificial. It has been matured by decisions of this court construing the various legislative enactments upon which it is founded, and at this time we are not permitted to indulge in a course of reasoning of our own, independent of the rules established by the early cases. Few questions respecting titles are now *res integra.* The foundation of the structure has been laid, and its superstructure built up almost altogether by the cases to be found from 1 Tennessee Reports down to and including Yerger's Reports. This system, in its particular application, belongs almost exclusively to the past, and to unsettle it now, or in the least shake or disturb any doctrine affecting the titles to land, would produce unspeakable disaster. The holding in *Coal Co.* v. *Scott,* supra, contrary to the cases above cited, is not supported by the citation of any authority, and none has been found by us.

Other questions were disposed of orally. The decree of the chancellor is reversed as to all of the defendants except defendant Pearson, and is affirmed as to him. Complainant will pay three-fourths of the costs of the appeal, and defendant Pearson one-fourth. The case is remanded for further proceedings.